## *Ex parte* The State, *ex rel.* Stow *et al.*

*Petition for Mandamus to Chancellor, to compel Reinstatement of Cause improperly struck from Docket.*

1. *When mandamus lies.* — *Mandamus* is the proper remedy to compel the reinstatement of a cause which has been improperly struck from the docket by the chancellor.

2. *Filing bill.* — A bill in chancery is to be considered as filed so as to entitle it to a place on the docket, and put it in the custody and power of the court, when it is deposited with the register, or with his assistant in his office, with the intention of filing it, although the fact and date of filing are not then indorsed on it.

3. *Dismissal of bill by complainant.* — The complainant may dismiss his bill at pleasure at any time before the defendant has pleaded, answered, or demurred, and without notice to any one; and an entry of such dismissal on the docket, made on a rule day at his instance, by the register's clerk, will be presumed to have been made with the knowledge and approval of the register himself.

4. *Pendency of two or more bills between same parties at same time ; election.* — On motion to strike from the docket one or more of several causes standing on the docket at the same time, between the same parties, and relating to the same matters, the proper practice is a rule on the plaintiff, in the first instance, to show

[State, ex rel. Stow.]

cause why he should not make his election between the several suits, and to dismiss or strike from the docket all the others ; and if he fails or refuses to make an election, to dismiss all except the suit first commenced.

APPLICATION by petition in the name of the State of Alabama, on the relation of James P. Stow and others, for a writ of *mandamus* to Hon. ADAM C. FELDER, chancellor of the southern chancery division, presiding at Montgomery, to compel him to reinstate on the docket of the chancery court at Montgomery a certain cause lately pending in said court, which was an information filed in the name of the State, on the relation of James P. Stow and others, citizens and taxpayers of the city of Montgomery, against the corporate authorities of said city, to restrain the collection of a tax levied by them to pay the interest on certain bonds issued in aid of the South and North Alabama Railroad Company. The facts shown by the petition and accompanying exhibits, and by the chancellor's answer to the rule *nisi*, served on him in the first instance, are these : —

In March, 1874, an information in the name of the State, on the relation of James P. Stow and others, as citizens and taxpayers in the city of Montgomery, was prepared, addressed to the chancellor of the southern chancery division, and praying for an injunction against the corporate authorities of the city of Montgomery to restrain the collection of a tax as above stated. This information or bill was presented to the Hon. JAMES Q. SMITH, the judge of the second judicial circuit at Montgomery, on the 23d day of March, 1874 ; but he refused to grant an injunction, and indorsed his refusal on the bill. It was then presented to Hon. A. C. FELDER, the chancellor, who also refused to grant an injunction, and indorsed his refusal on the bill, with the date, March 28, 1874. This bill was not then filed in the chancery court at Montgomery, but another was prepared, in which the names of several other citizens were added as relators, and two of the bondholders were made defendants with the corporate authorities of Montgomery ; and the further prayer was added, that the corporate authorities be enjoined from paying any further interest on the bonds ; and this second bill was presented to Hon. JAMES Q. SMITH, who, on the 11th day of April, 1874, indorsed on it his *fiat* for an injunction. This bill was filed with the register on the 1st April, 1874, and was entered on the docket as No. 950. At a special term of the chancery court in Montgomery, on the 23d April, 1874, the defendants made a motion before the chancellor to dissolve the injunction on the following grounds : " 1st, want of equity in the bill ; 2d, because no bond was given or required ; 3d, because said injunction issued contrary to law, and is unauthorized by law or practice ; 4th, said in-

junction was improperly obtained, and was inadvertently ordered and issued; 5th, because no security for the costs was given." This motion was sustained by the chancellor on the same day (April 13, 1874), and it was thereupon "ordered, adjudged, and decreed by the chancellor, that the bill and injunction in this case be stricken from the files of this court, and held and treated as if said bill had never been filed, and as if said injunction had never been ordered or issued."

On the 20th April, 1874, the first bill above named was filed in the office of the register at Montgomery, and indorsed by him as filed, and docketed as No. 958; and on the same day, being a regular rule day, one of the complainant's solicitors entered a motion on the docket for the dismissal of the bill without prejudice. This motion was granted, and an entry was made of it in these words: "Dismissed without prejudice, April 20, 1874, on motion of complainant." This entry, to which the name of the register was signed, was in fact made in his absence by the clerk regularly employed in his office, whose affidavit was submitted as one of the papers in the cause in this court, stating "that it was not uncommon for such orders and entries to be made by him as such clerk, and he believed it was proper for him to make such order or entry."

This cause (No. 958) being thus dismissed, another information (or bill) between the same parties, substantially relating to the same matters, and asking the same relief, was filed in said chancery court on the 27th April, 1874, and docketed as cause No. 962; and on this bill, on the 1st May, 1874, a *fiat* for the issue of an injunction, "without bond or security, or causing affidavit to be made," was indorsed by Hon. M. J. SAFFOLD, the judge of the first judicial circuit. At the next ensuing term of said court, on the 7th May, 1874, the defendants submitted a motion to the chancellor to strike this bill from the files, and to dissolve the injunction granted under it, on the ground that all the bills were substantially the same, and the one first filed had never been disposed of. The chancellor sustained this motion, and struck the bill from the files; and the application to this court is to compel him to reinstate it.

THOS. H. WATTS and J. S. WINTER, for the petitioners.— 1. The bill first prepared, on which the chancellor and circuit judge indorsed their respective refusals to grant an injunction, was never filed in the chancery court until the 20th April, 1874. The presentation of it to the chancellor, and his refusal to act on it, cannot have the effect of making it a cause pending in court. It remained the private property of the complainants, and it was optional with them to file or to destroy it. After the refusal of the injunction, the filing of the bill was a useless and

[State, ex rel. Stow.]

nugatory act; though, if the injunction had been granted as prayed, the doctrine of relation would have applied to everything done under the order, and the bill would have been considered as filed when the order was made. *Howe* v. *Willard*, 40 Vermont, 661; 1 Smith's Ch. Pr. 110; 38 Ala. 248; Rule 63, Rev. Code, 832.

2. No matter when that bill was filed, the complainants had the right to dismiss it, as they did, on the 20th of April, 1874, as a matter of course, and without notice to any one. *Howard* v. *Bugbee*, 25 Ala. 548; 1 Dan. Ch. Pr. (4th ed.) 790; 9 Paige, 245, 247; 7 Beavan, 350; 4 My. & Cr. 194. The payment of the costs was not a condition of the dismissal. *White* v. *Smith*, 4 Hill, N. Y. 166; 7 Wendell, 511; 12 Wendell, 191.

3. If two or more bills were pending between the same parties, and relating to the same matters, the complainants might have been compelled to an election. 1 Vesey, Jr. 544; 1 Wilson, 1818; 5 Madd. 17.

4. That *mandamus* is the proper remedy in the case, see *Ex parte Lowe*, 20 Ala. 330; *Mansony* v. *Stephenson*, 4 Ala. 317; *Reese* v. *Billings*, 9 Ala. 265; *Ex parte Thornton*, 40 Ala. 384; *Ex parte Garland*, 42 Ala. 562; *Ex parte Bradstreet*, 7 Peters, 648.

S. F. RICE and JNO. A. ELMORE, *contra.* — 1. When a bill is improperly or improvidently filed, it may be struck from the files by the chancellor on motion, or *ex mero motu*. *Washington* v. *Emery*, 4 Jones' Equity, N. C. 30.

2. When a bill for injunction is addressed and presented to the chancellor for his official action, and his refusal of the injunction is thereon indorsed by him, the subsequent filing of that bill relates back to the time when it was first presented to him. *Howe* v. *Willard*, 40 Vermont, 655; *Morgan* v. *Nelson*, 43 Ala. 592; *Phillips* v. *Beene*, 38 Ala. 248. Constructive filing is, to all intents and purposes, equivalent to actual filing. The bill must be filed, actually or constructively, before any judicial officer can act upon it; and after he has acted on it, it becomes a court paper.

3. The dismissal of the second cause, No. 958, was a nullity. The complainant may dismiss his bill, in some cases, on application to the register, not to the register's clerk or assistant; but neither the register nor his clerk can dismiss it. Rev. Code, § 3353. The register's clerk or assistant can only act for him ministerially, and cannot perform any official act.

4. So long as the costs remain unpaid, the cause is still pending. *White* v. *Smith*, 4 Hill, 166; *Jones* v. *Delavan*, 7 Wendell, 511; *Robinson* v. *Taylor*, 12 Wendell, 191.

VOL. LI.

5. The chancellor's order is, in effect, an order dissolving an injunction, and dismissing the bill. From such an order the statute gives an appeal. Rev. Code, § 3439.

PETERS, C. J. — This is an application for *mandamus* against the chancellor of the southern chancery division of the State, to compel him to reinstate a cause on the docket, which has been improperly stricken from the same, by order of said chancellor. There was a rule *nisi* granted in the first instance, according to the usual practice of this court (*Ex parte Lowe*, 20 Ala. 330, 334); and the chancellor, having been duly served with the rule thus granted, now seeks to be discharged upon his answer to the same.

1. There can be no doubt that *mandamus* is a proper remedy, under our practice, in such a case as this. *Stephenson* v. *Mansony*, 4 Ala. 318; 20 Ala. 330, *supra*.

It may be well doubted whether any court in this State has authority to strike a cause from the docket, except as a means to compel a party to comply with some proper order made in the progress of the suit. Such a practice is not to be encouraged. Courts are established for the redress of injuries, by the administration of the proper remedy by due course of law. This is the emphatic declaration of our fundamental law. The constitution declares, " That all courts shall be open ; that every person, for any injury done him in his lands, goods, person, or reputation shall have a remedy by due process of law ; and right and justice shall be administered without sale, denial, or delay." Const. Ala. Art. I. § 15. And another section of the same instrument further declares, " That no person shall be debarred from prosecuting or defending, before any tribunal in the State, by himself or counsel, any civil cause to which he is a party." Art. I. § 12. The spirit and policy of these commands should govern our practice. Their purpose and object is to secure a trial of all causes in court on the merits. This is the sole purpose of all suits, and the courts should give it every possible aid. The judge, who presides in the court, is simply the agent of the sovereign, to administer the sovereign power in the judicial branch of the government. The citizen is the sovereign. It is his power that the court administers. Can this be done by driving the citizen out of court, without· hearing his complaint, and administering the proper remedy, upon an issue formed upon the merits of his suit ? Our whole system of pleading compels an answer in the negative. And could the sovereign in his unlimited authority stand in court, he would very probably dismiss the judge, his agent, if he refused to hear his suit upon the merits, for which alone it was instituted, or if he attempted to debar him ·

from its prosecution, by striking his cause from the docket of the court, which was established for its trial in the only mode that any suit can be justly said to be tried — that is, on its merits ; on its " right and justice." It is in this country a gross misuse and contempt of the sovereign and his authority, to defeat or fall short of this great end of all litigation, — *a trial on the merits*.

2. A suit in chancery is commenced by bill addressed to the chancellor of the division in which the same is filed. Rev. Code, § 3325. From this it is to be inferred, that the filing of the bill, after it is prepared, as required by the statute, is necessary to entitle the cause to a place on the docket. Rev. Code, §§ 3327, 725, cls. 2, 6 ; Ib. p. 823, Rules 1 & 63. The original and technical application of the word *file* has long gone out of use. It means to fix upon a string or wire, kept by the clerk or register of the court in which the paper is intended to be filed. *Phillips, Goldsby & Blevins* v. *Beene's Adm'r*, 38 Ala. 248. This practice has never been in use in this State. A mere deposit of the paper with the clerk in the court during its session, for the purpose of filing the same, has under our practice been deemed sufficient. But in order to have competent proof of the filing, it is proper for the clerk or register to indorse the date of the filing, and the fact of filing, on the paper filed, and sign the same as clerk or register, or enter the same as filed in the proper docket. This puts the paper in the custody of the court, and the power of the court may be exerted to protect it, and compel its production, or supply its loss. Here the action taken on the first bill was a sufficient filing to amount to a commencement of the suit.

3. After suit is commenced, the complainant may, on application to the register in vacation, dismiss his suit, giving the defendants, *who have* " pleaded, answered, or demurred," five days' notice of such application ; and on *such* dismissal the register may issue execution against such complainant for all costs accruing to the time of the dismissal. Rev. Code, § 3353. But it will be seen that the rule thus prescribed only applies in such cases as the defendants have " pleaded, answered, or demurred." This is not such a case, in reference to the bill first filed. It was simply filed or deposited with the register or court, by the application for the injunction, and no other steps were taken. When this latter is the condition of the suit, the complainant " retains the absolute dominion of the suit until the decree ; and until that stage of the suit, he may dismiss the bill at his pleasure." 1 Smith's Ch. Pr. p. 312. The memorandum on the register's docket is sufficient to show that this power over his suit the complainant intended to exercise, and did exercise in a form competent to effect his

[*Foust v. Chamblee's Administrator.*]

purpose. The fact that the memorandum was made by the clerk of the register, does not vitiate the act. It will be presumed, in support of its regularity, that the register knew of the act and approved it. There was no one interested in the act thus performed, save the complainant, and if he treated it as valid, it should be so treated by the court.

4. There is no rational dispute about the dismissal of the second bill. Then, at the time of the chancellor's action in striking the third bill, or bill numbered 962, from the docket, there was only the one bill pending in court. This bill could not be stricken from the docket for the reasons shown in the chancellor's answer to the rule *nisi*. If there had been doubt in the mind of the chancellor as to this, the proper practice would have been a rule to show cause served on the complainant, why he should not elect to dismiss all his bills save one; and upon his election, to have retained that one upon the docket, and dismissed the others; and if he refused to make his election, then to have dismissed all save the one first filed and still pending in the court.

In this view of the practice, the chancellor's order dismissing bill numbered 962, or striking the same from the docket, was not made in conformity with law, and his answer to the rule *nisi* is insufficient. The rule and order *nisi* is made absolute. Let a *mandamus* issue accordingly, returnable at the present term of this court. Costs are reserved until the return of the *mandamus*.