## The People on the relation of Houghton County v. The Auditor General.

*Mandamus: Strict legal duty: Discretionary matters.* Mandamus lies only to enforce strict legal rights, and will not be granted to enforce the doing of an act which by law lies in the discretion of the officer refusing to do it.

*Delinquent tax returns: Auditor general: Returns forwarded too late: Statutes construed.* The statute (*Comp. L. 1871,* § *1034*) requiring all returns by the county treasurers of lands on which the taxes are delinquent, to be delivered into the auditor general's office on or before the last day of March in the year following their assessment, and the auditor general being required by another section of the statute (§ *1044*) to make out the lists for publication on the first day of July, *mandamus* will not be granted to compel that officer to receive and accept such returns which are forwarded after the first day of July and upon the basis thereof to credit the county with the amount of delinquent taxes so returned.

*Discretion: Accounts between state and county: Belated returns.* Whether or not the auditor general might in his discretion receive and accept returns forwarded to him at such a late day, it is clear there is nothing in the statutes making it his duty so to do, or conferring upon the county the legal right to demand credit upon its account with the state for the amount of such belated returns.

*Heard April 10. Decided April 17.*

Application for *mandamus.*

*T. L. Chadbourne, S. F. Seager* and *Ashley Pond,* for relator.

*Otto Kirchner, Attorney General,* for respondent.

COOLEY, CH. J:

Application is made in this case for a mandamus to compel the auditor general to credit the relator with the taxes assessed on lands returned as delinquent thereon for the taxes of the year 1870. The controversy grows out of the failure of the county treasurer to make return in due season; the return not having been forwarded by the county treasurer until after the first day of July, 1871, and not having been received at the auditor's office until the 25th of that month.

The statute plainly contemplates that all returns shall be delivered into the auditor's office not later than the last day of March in the year following their assessment.—*Comp. L.*, § *1034.*  This is not disputed by the relator, but it is contended that the requirement of time is directory merely, and that the auditor general has no discretion to refuse to receive the return whenever it may come in, and to credit the county with the amount of taxes reported delinquent. This construction of the statute is based on the idea that neither the state nor individual tax-payers can be injuriously affected by the delay.

So far as the interests of individual tax-payers are concerned, it is probably true that they do not necessarily suffer from the delay except as inconvenience may be an injury. They have always a right to pay their taxes to the county treasurer, and if they apply there for the purpose, they need not concern themselves with the return to the auditor's office. But under our present system it is contemplated that there shall always be an opportunity to pay delinquent taxes at the auditor's office; and where parties own lands in different counties, the convenience in doing this is often of considerable importance. And as the delinquent taxes are increased rapidly by heavy interest for delay in payment, it is reasonable to suppose that parties might have their burdens considerably increased while waiting for a return which they know ought to be made, but which they cannot tell when to expect. It would also be very likely to lead to mistakes and to losses of land in consequence, if parties who pay at the auditor's office, and who apply at a time when all unpaid taxes should be found there, and pay all that the records there show, were liable afterwards to have delinquencies reported against them.

But we think if the statute is construed in the light of state interest merely, there are reasons for justifying the action the auditor has taken. Under other provisions the auditor is to proceed to make out the lists of delinquent lands on the first day of July, and to advertise them for

sale.—*Comp. L.* § *1044.* These lands, it will be seen, were not returned in time for that purpose. Now we are not disposed to question the right of the auditor general to receive a delayed return that comes to him in such time that he may make use of it without its creating any confusion in his office; and we are inclined to think any inconvenience individuals may be put to in consequence must be overlooked as something incidental to the accidents of public administration. But the grounds on which the auditor may be compelled to receive a return after the time when he may make use of it for the purposes of a sale for the current year, are not to our minds at all satisfactory. The statute has then not been complied with; some inconvenience and a year's delay in the most important step to be then taken,—the sale,—has then been caused, and some embarrassment in the accounts between the county and the state must follow. To compel the auditor at that time to receive the return, the county should be able to point to some statute which makes it his legal duty. We find no such statute; on the other hand, as before stated, we think the statute very plainly contemplates no return later than the last day of March. If the auditor, in his discretion, might consent to receive it, his discretion must be appealed to; mandamus lies only to enforce strict legal rights.— *People v. Judges, etc., 1 Doug. (Mich.), 319; People v. Judge of Wayne Circuit, 19 Mich., 296; East Saginaw Water Com'rs v. Common Council, 33 Mich., 164.*

Whether the state would actually be the loser by crediting the delinquent taxes to the county after the proper time for a return, we do not care to consider. The statutes are not very clear regarding the accounts between the counties and the state in some particulars, and a consideration of that question might require an examination into the settled practice of the auditor's office. But it is enough for us to decide that in our opinion the county had no legal right to demand the credit. If it had such a right at the time,

36 MICH.—35.

it might be necessary to inquire into the effect of the long delay in making this application.

The writ must be denied.

The other Justices concurred.