[No. 11397.   Department Two. — June 13, 1888.]

J. M. WOOD, RESPONDENT, v. F. F. STROTHER, AUDITOR OF THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

| 76 | 545 |
| 81 | 547 |
| 81 | 550 |
| 76 | 545 |
| 93 | 405 |
| 76 | 545 |
| 104 | 315 |
| 76 | 545 |
| 109 | 148 |
| 76 | 545 |
| 111 | 544 |
| 76 | 545 |
| J114 | 479 |
| 76 | 545 |
| 118 | 590 |
| 76 | 545 |
| 126 | 169 |
| 126 | 174 |
| 76 | 545 |
| 130 | 187 |
| 76 | 545 |
| 135 | 489 |
| 76 | 545 |
| 139 | 402 |

MANDAMUS — ACT INVOLVING DISCRETION OR EXERCISE OF JUDICIAL POWER. — The test for the issuance of a writ of *mandamus* to compel a board, tribunal, or officer to do an act which he has refused to do is not whether the refusal involves the exercise of discretion or an exercise of judicial power, but whether it was a determination which the law intended to be final; and if not, whether there is a plain, speedy, and adequate remedy in the ordinary course.

STREET ASSESSMENT — COUNTERSIGNING OF WARRANT BY AUDITOR. — The provision of the consolidation act of San Francisco requiring the auditor to examine the proceedings in relation to a street assessment before countersigning the warrant, and providing that he "must be satisfied that the proceedings have been legal and fair," was not intended to make the determination of the auditor a final disposition of the matter; and if the proceedings were in accordance with the requirements of the act, *mandamus* will issue to compel him to countersign the warrant.

ID. — SECOND ASSESSMENT AFTER FIRST HAS BEEN ADJUDGED VOID — REASONABLE TIME. — If an assessment has been adjudged to be void for causes affecting the assessment itself, and not the proceedings upon which it rests, a new assessment may be made within a reasonable time. Instance of time which was not unreasonable under the circumstances.

ID. — PAYMENT OF PART OF THE VOID ASSESSMENT. — The fact that some of the owners have paid what was charged against their property by the void assessment is not of itself a reason why a valid assessment should not be made. *Semble*, that the contractor would not be allowed to collect twice from the owners who had paid, but that a court of equity would treat the payments made as payments in advance, and would compel the contractor to satisfy the second assessment of record.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*George Flournoy, Jr.*, and *John L. Love*, for Appellant.

*J. C. Bates*, for Respondent:

HAYNE, C. — This is an appeal from a judgment awarding a writ of *mandamus* to the auditor of San Francisco to countersign a street-assessment warrant

under the act of 1872. That act provides that the warrant shall be countersigned by the auditor, "who, before countersigning it, shall examine the contract, the steps taken previous thereto, and the record of assessments, *and must be satisfied that the proceedings have been legal and fair.*" (Laws 1871–72, p. 813, sec. 10.)

The word " fair " seems very loosely used in the above provision. In common usage it would convey some idea of justice or equity. But it is not possible that it could have been intended that in a case where the proceedings are legal,— that is to say, in accordance with the requirements of the act,—the auditor could refuse to sign upon the ground that the law was not just, or upon his own undefined notions of fairness. The word, therefore, adds nothing to the force of the word "legal," but is one of those expressions which are put in for the sake of the sound, and which convey no definite meaning.

With reference to the legality of the proceedings which the auditor is to examine, viz., "the contract, the steps taken previous thereto, and the record of the assessments," we think there can be no doubt but that if a competent court finds, after examination, that they are illegal, it will not compel the auditor to sign the warrant. The first question, therefore, is, whether the proceedings were illegal.

We see no illegality in them. The first defense states that the defendant " has no information or belief upon the subject sufficient to enable him to answer," and therefore he denies, *seriatim,* that the various proceedings set forth in the complaint were taken. The second defense avers " that he has examined said contract, and the steps taken previous thereto, as they are set out and referred to in said petition, and the record of said assessment mentioned in said petition, and is not satisfied that the proceedings upon which the same is based are or have been legal or fair." It is to be observed of these two defenses that they are not necessarily inconsistent;

for the second does not specify wherein the proceedings are illegal, nor does it say that the auditor is satisfied that they are so. It simply says that he has not made up his mind on the question. But it would make no difference if the defense had set up that he was satisfied that the proceedings were illegal; for the court finds facts which show that the steps required by the street law were taken. The appeal is from the judgment only, and none of the evidence is brought up. The findings, therefore, are to be taken to be true; and it follows that the proceedings were "legal."

The second and third defenses set up matters which are outside of the proceedings referred to by the section under which the auditor acted, namely, that a former assessment had been made for the same work, and that "the greater part of the amounts therein assessed were many years since paid to and collected by plaintiff or his assignor, and that the plaintiff had lost his right by lapse of time." The court finds that no valid assessment had previously been issued. If there was a previous assessment which was invalid, that would not, of itself, be a reason why a valid assessment should not be made if the prior proceedings are sufficient to support it. (*Himmelmann* v. *Cofran*, 36 Cal. 412.) Nor would the fact that some of the property owners had paid their proportion before the invalidity was discovered affect the question. Such payments would be regarded as payments in advance; and the contractor would not be allowed to collect the sums over again any more than the holder of a note who has received payment before it was due would be allowed to do so. If the contractor should refuse to discharge the lien of record, a court of equity is amply competent to afford the necessary relief. The fact that some have paid in advance can afford no protection to those who have not paid.

Nor is the lapse of time a sufficient reason why the auditor should refuse to sign. The act fixes no time in

which the assessment must be made. (*Dyer* v. *Scalma-nini*, 69 Cal. 640.) Doubtless it must be done in a reasonable time. But the question of reasonableness of time is to be determined upon a consideration of all the circumstances. An apparently unreasonable delay might be explained by evidence. It does not seem to us that the auditor is charged with the duty of conducting an investigation into such outside circumstances. And if it be said that the writ of *mandamus* issues only in the discretion of the court, or, as it is sometimes said, is a " prerogative " writ, the answer is, that we cannot say that there was an unreasonable delay. There was considerable litigation over the first assessment, which was not declared void until May 30, 1883. The second assessment was made May 12, 1885. We do not think that the lapse of time should deprive the party of his assessment.

The proceedings being " legal," the auditor was wrong in his refusal to countersign the warrant; and the remaining question is, whether he can be compelled to sign by the writ of *mandamus*,—in other words, whether *mandamus* is the proper remedy. The learned counsel for the appellant has directed most of his argument to this question. The argument against the writ is, in substance, that the statute requires the auditor to examine the proceedings, and satisfy himself that they are legal, before signing; and that if he has examined them and become satisfied that they are not legal, the most that can be said is, that he has committed an error in a matter confided to his discretion, and that the function of the writ is not to review such exercise of discretion.

It must be acknowledged that this argument is exceedingly plausible. There are innumerable cases in which it has been laid down that *mandamus* cannot issue to control discretion. The rule—which is undoubtedly correct when properly understood—has been expressed in various forms. It has been repeatedly said that the

writ cannot perform the functions of a writ of error; that it cannot issue to revise judicial action, but can only compel the performance of ministerial functions; and that it will issue to compel a tribunal to act in some way, but not in any particular way. These formulas undoubtedly express a truth, but they express it in an inaccurate and misleading manner; and by reasoning from them as if literally and in all cases true, courts have sometimes been led into error, and have frequently been forced to call acts " ministerial " which are plainly not so. An examination of the authorities will demonstrate the inaccuracy of the above phrases.

Thus it is not accurate to say that the writ will not issue to control discretion; for it is well settled that it may issue to correct an abuse of discretion, if the case is otherwise proper. (*Ex parte Bradley*, 7 Wall. 377; *State* v. *Lafayette Co.*, 41 Mo. 226; *Village of Glencoe* v. *People*, 78 Ill. 389; *People* v. *Superior Court*, 10 Wend. 285; *Stockton R. R. Co.* v. *Stockton*, 51 Cal. 339; Tapping on Mandamus, *14.)

So while in one sense it is correct to say that the writ cannot be made to perform the functions of a writ of error, in another sense it is not; for, as was said by Chief Justice Marshall in *Ex parte Crane*, 5 Pet. 193, "a *mandamus* to an inferior court of the United States is in the nature of appellate jurisdiction." (See also *People* v. *Bacon*, 18 Mich. 253.)

So it is not universally true that the writ will not issue to control judicial action, or to compel a tribunal to whom the examination of a matter is intrusted to act in a particular way. The cases in our own state show this. Thus in *Russell* v. *Elliott*, 2 Cal. 245, the writ issued to compel a judge to enter judgment upon the report of a referee. Here the judge had examined the matter, and had arrived at the conclusion that it was not proper that the judgment should be entered upon the report. But

the higher court differed with him, and commanded him to do what as a judge he had refused to do.

So in *Merced Mining Co.* v. *Fremont*, 7 Cal. 130, the writ was issued to compel the judge of a district court to issue an attachment for contempt in disobeying an injunction. A motion had been made to the judge to commit the offender, but the judge had decided that he could not do so. Here the matter was certainly to be determined by the judge in the first instance. He erred in his conclusion. And to say that a correction of such error by *mandamus* is not revising judicial action, or not compelling the judge to act in a particular way, is a misuse of language.

So it is well settled that a *mandamus* may issue to compel a judge to sign a bill of exceptions. (*People* v. *Lee*, 14 Cal. 510; *People* v. *Rosborough*, 29 Cal. 416; *People* v. *Keyser*, 53 Cal. 184; *Lin Tai* v. *Hewill*, 56 Cal. 118; *People* v. *Crane*, 60 Cal. 279.) Whether the party has a right to have a bill, or whether it is in time, are certainly judicial questions, and they are to be decided in the first instance by the judge, who, if he decide them correctly, will not be compelled by the writ to take back his decision. (*Clark* v. *Crane*, 57 Cal. 629.) Is anything gained by calling such decision a "ministerial" act?

So in *Stockton R. R.* v. *Stockton*, 51 Cal. 329, a *mandamus* was issued to compel the delivery of certain bonds, although the act provided that the bonds were to be delivered upon certificate of the council that the " road has been constructed and the track laid *in a manner and of a character acceptable to them.*"

Decisions similar in principle have been made in other courts.

In *King* v. *Justices of West Riding*, 5 Barn. & Adol. 667, the writ issued to compel the justices of the West Riding to hear an appeal which they had dismissed, upon the ground that a certain notice had not been given. Parke, J., said: "We have no right to interfere

with the discretionary power of the sessions; where they have that power, their discretion is to be confided in. But the question what is such reasonable notice as gives them jurisdiction to entertain an appeal is a legal question of which they are not the exclusive judges; and this court will see that in determining such a point they act legally and according to the jurisdiction which they possess." In *Regina* v. *Recorder of Liverpool*, 1 Eng. L. & Eq. 294, the foregoing seems to have been limited to cases where the erroneous decision was upon preliminary matters. The court, per Patteson, J., said: "*Queen* v. *Goodrich* draws the true distinction, that where any preliminary step is necessary in order to give the court of quarter sessions power to hear the appeal, and the court comes to a wrong conclusion of *law*, not of *fact*, in respect to that preliminary step, this court will interfere by *mandamus*." The doctrine of the foregoing cases was approved in *Castello* v. *St. Louis Circuit Court*, 28 Mo. 274, in which the court declared that it had seen no American cases to the contrary.

In New York, where the formulas as to discretion, judicial action, etc., have often been repeated, it has been held that the writ may issue to compel a judge to vacate an order granting a new trial upon the ground of newly discovered evidence, which order was in violation of the established rules that there must be no laches, and that the newly discovered evidence must not be cumulative merely,—there being no other adequate remedy. (*People* v. *Superior Court*, 10 Wend. 285; 5 Wend. 114.) So where the court of common pleas set aside the report of referees upon the merits, and erred in doing so, the writ issued to correct the error. (*People* v. *Niagara C. P. Co.*, 12 Wend. 246.) So where the court of common pleas granted the plaintiff leave to amend his declaration, but, under an erroneous view of the law, refused to grant leave to the defendant to plead, a higher court (*per* Bronson, J.) awarded a *mandamus* commanding the in-

ferior court either to allow the defendant to plead or
refuse to allow the declaration to be amended. (*People*
v. *N. Y. Court of Common Pleas*, 18 Wend. 534.)

- In Michigan the rule as to discretion, etc., prevails.
(See *Houghton County* v. *Auditor-General*, 36 Mich. 273;
*Parks* v. *Marquette, Judge*, 38 Mich. 244; *Wells* v. *Circuit
Judge*, 39 Mich. 21; *C. & N. E. R. R.* v. *Circuit Judge*, 40
Mich. 168; *Stork* v. *Judge of Superior Court*, 41 Mich. 5.)
Yet in that state the writ has issued in the following
cases: To compel a judge to set aside a judgment ren-
dered against the relator because of an illegal notice of
trial (*People* v. *Bacon*, 18 Mich. 247); to compel a court
to vacate an order overruling a motion for relator's dis-
charge from arrest (*Watson* v. *Superior Court*, 40 Mich.
730); to compel a judge to vacate an injunction (*Van
Norman* v. *Jackson, Circuit Judge*, 45 Mich. 205); to
compel a judge to vacate an order denying a motion to
amend a record (*Frederick* v. *Mecosta, Circuit Judge*, 52
Mich. 529.)

In Alabama the rule as to discretion prevails. (See
*Ex parte S. & N. A. R. R. Co.*, 44 Ala. 655, 656.) But in
that state the writ has issued in the following cases: In
*Ex parte Lowe*, 20 Ala. 330, the court had granted a new
trial upon condition that costs were paid within a cer-
tain time. The costs were paid, but not, as was claimed,
within the time prescribed by the order. The court
took this view, and made the judgment absolute. The
higher court considered that the view of the lower court
was erroneous, and awarded a *mandamus* to compel a
new trial.

So where a court gave an improper construction to a
stipulation of record and ordered a trial where it ought
to have ordered a judgment in accordance with the stipu-
lation, the writ was issued to compel a judgment. (*Ex
parte Lawrence*, 34 Ala. 446.)

- So the writ was issued to compel a probate judge to
approve a bond which had been tendered to him, and

which he had refused to approve (*Ex parte Candee,* 48 Ala. 387); and to compel a chancellor to reinstate a bill which he had ordered stricken from the docket. (*Ex parte State ex rel. Stow,* 51 Ala. 69.)

And decisions similar in principle have been made in other states.

In *Ex parte Pile,* 9 Ark. 336, a judge was compelled by the writ to issue an injunction which he had refused to issue. In *State* v. *McArthur,* 13 Wis. 407, the writ issued to compel a change of venue. In *Commonwealth* v. *Sessions of Norfolk,* 5 Mass. 435, it issued to compel a justice to accept a verdict and render judgment thereon. (And see also *State* v. *Lazarus,* 36 La. Ann. 579; *Commonwealth* v. *Sessions,* 9 Mass. 388; *Rand* v. *Townshend,* 26 Vt. 670; *Delany* v. *Goddin,* 12 Gratt. 266; *Gresham* v. *Pyren,* 17 Ga. 263; *Ex parte Martin,* 5 Ark. 371; *Barnett* v. *Warren Circuit Court,* Hardin, 172.)

In view of the foregoing cases, it seems a mere perversion of language to say that the writ will never issue to control judicial action, or to compel a tribunal to act in a particular way. It is by no means intended to assert that the writ could issue in this state in all the cases above referred to. The propriety of the issuance of the writ in any case must depend upon whether, under the law of the state where the litigation arises, the determination was intended to be final; and if not, upon whether the system of practice furnishes any other adequate remedy. These things might be different in different states; but the cases cited serve to show that the formulas above mentioned are not universally and literally true, and that it is dangerous to reason from them as if they were so.

In every case the tribunal that is to act must determine in the first instance whether the case is a proper one for its action. And in our opinion the true tests are whether its determination is intended by law to be final, and if not, whether there is any other "plain,

speedy, and adequate remedy." If the determination of the tribunal was intended to be final, it is plain that it cannot be disturbed, either on *mandamus* or in any other way. If it was not intended to be final, but there is another "plain, speedy, and adequate remedy," the writ cannot issue; for it was not designed to usurp the place of other remedies. But if the determination was not intended to be final, and there is no other adequate remedy, the writ must issue. Otherwise there would be an admitted wrong without a remedy. The writ issues in such case to prevent a failure of justice. And this is its ancient office. In the language of Lord Mansfield: "It was introduced to prevent disorder from a failure of justice and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where, in justice and good government, there ought to be one." (*Rex* v. *Barker*, 3 Burr. 1268; see also 3 Bla. Com. 110; Tapping on Mandamus, 9; *Commonwealth* v. *Sessions of Hampden*, 2 Pick. 418.)

It will generally happen that where discretion is committed to an officer, or where a judicial tribunal is called upon to act, its determination is either final or only subject to review in certain prescribed ways. But, as above shown, this is not universally true; and it is dangerous to reason as if it were so. The ultimate test is, in our opinion, as we have stated.

In the present case there can be no doubt that the auditor was to examine the proceedings and satisfy himself that they were legal, for the statute expressly says so; and if they were found by the court to be illegal, the writ could not issue. But being perfectly legal, the question is, whether the determination of the auditor was intended to be final. And we can see no ground for saying that it was. There is nothing in the language of the act which shows that it was intended to be final. It certainly would not be final *in favor* of the contractor. In the numerous cases in which street assessments have

been before the court, we have never seen it suggested that the signature of the auditor cured previous illegality; and it seems clear that it would not do so. Why, then, should it be final *against* the contractor, and be conclusive that the proceedings are illegal when it is apparent that they are not so? If the auditor's determination of this purely legal question were intended to be final, it would have been natural for the charter to have given the parties interested a hearing. Nothing of the kind is provided. The proposition therefore must go to this extent, that the auditor is clothed with absolute and despotic authority over the rights of the contractor. We are not prepared to go so far.

If the determination of the auditor be not final, then, upon the principles above stated, the writ must issue; for, under the street law, the failure to sign the warrant brings the proceedings to a complete stop, and there is no other remedy in law or equity.

We advise, therefore, that the judgment be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.