L. A. THURSTON, Minister of Interior *vs.* G. J. ROSS, Auditor-General.

Appeal from McCully, J.

Hearing, June 25, 1890. Decision, July 3, 1890.

Judd, C.J., McCully, Bickerton, Dole, JJ.

Vouchers for the support, maintenance and guarding of prisoners, while employed on the Volcano road, were presented by the Minister of the Interior to the Auditor-General for approval; the appropriation for that road was exhausted at the time said work was performed and said bills incurred. The vouchers were drawn upon the appropriation for support of prisoners.

Held, the Auditor-General should have audited and approved them.

Opinion of the Court, by Dole, J. McCully, J., Dissenting.

The petition was for a writ of mandamus to compel the respondent to audit certain accounts or show cause for not doing so. The respondent appeared and showed cause before Mr. Justice McCully, who dismissed the proceedings, from whose decision the complainant appealed to this Court. Afterwards the parties filed the following stipulation :

" It is hereby agreed between the parties to the above matter that all technical points which may arise in the case may be waived, and the judgment of this Honorable Court rendered upon the point as to whether or not the Auditor-General should audit bills incurred for the support, maintenance and guarding of prisoners employed upon the Volcano road, the appropriation for that road having been exhausted at the time said work was performed and said bills incurred, said bills being charged to the appropriation for support of prisoners."

This stipulation radically simplifies the case and enables the Court to consider the law involved, without going into the im-

9

portant question of the legal discretion of the Auditor-General, which was before the Court below.

The respondent contends, and the decision appealed from holds substantially, that the Legislature having appropriated a definite sum of money for the Volcano road, which had been exhausted, the performance of prison labor on the same work was a transfer of the appropriation for the Support of Prisoners and was consequently illegal; also, that the performance of work on the Volcano road, in addition to work and materials paid for by the appropriation thereof, was defeating the intention of the Legislature, which countenanced only for that particular work such labor and materials as their appropriation might pay for.

It is clear to us that the performance of prison labor on the Volcano road, under the circumstances, was not a transfer from the appropriation for support of prisoners, for the following reasons: A transfer is an expenditure of money belonging to one appropriation on account of another appropriation, so that the appropriation to which such money is entitled fails to get the benefit of it, as for instance, the expenditure of the appropriation for the extension of Queen street on Kinau street. The law requires that "prisoners sentenced to imprisonment at hard labor shall be constantly employed for the public benefit on the public works, or otherwise, as the Marshal, with the approval of the Minister of Interior, may think best." (Civil Code, Sec. 215.) The Volcano road being a "public work," the Minister of Interior was fully authorized to approve of the employment of prisoners thereon; while so employed, as in any other locality or on any other "public work," it was necessary that such prisoners should be furnished with food and shelter and have the necessary guards and overseers, the expenses whereof are properly chargeable to the appropriation for the support of prisoners, as has heretofore been the custom. The performance of prison labor upon a " public work, " for which there is an independent appropriation, cannot be termed a transfer of an appropriation, for the appropriation for the support of prisoners is thereby expended according to law; and if the object of a distinct appro-

priation, which is a public work, receives the benefit of such labor, that is also according to law and does not defeat the intention of the Legislature as to such other appropriation, such intention being limited solely to the expenditure of a definite sum of money out of the treasury on account of such object. The Legislature in its Appropriation Bill deals with money, rather than with services and material. It would undoubtedly be well for it to require that not only prison labor, but also all special services furnished by government employees to any enterprise supported by a legislative appropriation, should be charged against such appropriation; as for instance, that the services of a government surveyor in laying or grading a public road should be charged against the appropriation for the road. At present there is no law that requires the Minister of Interior to have the prison labor in question charged against the Volcano road appropriation.

In brief, the payment of the bills in question should have been authorized by the Auditor-General, because the law requires it, and necessity demands it. The law requires that when prisoners can be "well employed in the performance of any public work" they shall constantly be so employed; and necessity demands that these men, deprived of their opportunities of self-support by the authority of the State, shall be supported by the State; they cannot be left to starve, neither can such dealers as may furnish them with food and other necessaries during such confinement be denied their reasonable charges therefor. The contrary view would tend to embarrass if not defeat the execution of the law for applying the labor of prisoners to public works, and in some cases at least, as in the case in point, to cast an unnecessary slur upon the Government in its prison management; for carried to its logical sequence, such a view would insist either that the prison laborers in question should have gone without food and other necessaries during the month they were occupied on the Volcano road, or that the dealers who furnished them must now lose the value of the materials furnished.

We are, therefore, of the opinion that the Auditor-General should authorize the payment of the bills in question.

### CONCURRING OPINION OF BICKERTON, J.

This case, as it appears here by the stipulation, is shorn of the most important questions that were argued and passed upon by Mr. Justice McCully, viz.: The judgment and discretion of the Auditor-General to determine whether a bill was drawn upon a fund which was applicable to it, and further, as to abuse of this discretion. There does not seem to be any appeal on these points which were decided in favor of the Auditor-General in the Court below, but by the stipulation they are not now before us, and we are limited to the one question, which in my opinion assumes the shape of a question submitted by agreement of the Minister of the Interior and the Auditor-General to the Supreme Court for their opinion; the question as to whether a writ of mandamus should issue seems to have been abandoned.

The law, as it now stands, undoubtedly gives the Minister of the Interior full authority to use prison labor on any public work; there is no law which requires that such labor shall be charged to the appropriation for such public work. It had been the custom for a long time to do so, until the late Administration abolished the custom or rule, thereby placing at the disposal of the Minister of the Interior the whole appropriation of $80,000 and the contingent one of $15,000 for the support of prisoners, which he could use in the shape of labor to supplement any appropriation for any public work. A work for which an appropriation of, say, $10,000 was made could be made to appear to cost only $9,000, leaving a balance of $1,000 unexpended, when in fact it had cost $19,000 by the use of prison labor, which had cost the country $10,000. As the law now stands the Minister might have put all the prison labor in the Kingdom on the Volcano road and no one could prevent it until he would be called to account for his doings by the Legislature. Wherever these prisoners may be they have to be fed and guarded and the bills paid, notwithstanding the fact that they may be working on a public work for which the appropriation is exhausted.

After looking at the question from all points of view, the fact still remains that the Minister had the authority of law to employ these prisoners on the Volcano road, and the bills for their support and guards had to be paid from the only appropriation available, viz., support of prisoners. If the Minister misused or abused his authority, it was a matter between him and the Legislature. There certainly is some legislation required on this matter, for, although this is not actually taking so many dollars from one appropriation and devoting it to other work for which there was an appropriation that is exhausted, the result is the same, the work is costing more than was contemplated or intended by the Legislature.

I feel compelled, as the law now stands, to concur in the conclusion arrived at in the above opinion.

### DISSENTING OPINION OF McCULLY, J.

This case purports to be an appeal of the matter which came before me in March last, but now under the following stipulation:

"It is hereby agreed between the parties to the above matter that all technical points which may arise in the case may be waived, and the judgment of this Honorable Court rendered upon the point as to whether or not the Auditor-General should audit bills incurred for the support, maintenance and guarding of prisoners employed upon the Volcano road, the appropriation for that road having been exhausted at the time said work was performed and said bills incurred, said bills being charged to the appropriation for support of prisoners."

I am at a loss to understand the legal status of the present case. Counsel say that no writ of mandamus is now asked. I therefore respectfully submit that this is not an appeal of the case formerly heard, and that the law as decided before stands as the law of the case, namely, that the authority of the Auditor-General to audit—that is to examine and approve or refuse to approve of bills—is an authority to exercise his judgment or discretion therein, and that hence he cannot be compelled by writ of mandamus to make a certain decision, unless it shall appear

that he has abused his discretion.  The Court now not being called to hear an appealed mandamus case, what legal form known to our law is presented?  It is clearly not the submission by parties of a question in difference which might be the subject of a civil action in the Supreme Court, upon an affidavit that the controversy is real, and upon which final judgment may be rendered and enforced  (C. L., p. 330.)  It is not one of the three cases provided by Art. 70 of the Constitution: the King, his Cabinet and the Legislature shall have authority to require the opinions of the Justices of the Supreme Court upon important questions of law ; for it is the request of the Minister of the Interior and the Auditor-General.

It is stipulated that all technical points may be waived.  A technical point might be the substitution of the newly appointed Minister of the Interior in place of the Minister who brought this petition, but I do not understand the above points to be technical, but of the essence of the matter, so that, being waived, nothing is left.  As, however, argument has been made before us without considering the objections which appear to me to lie against the mode of proceeding, I wish to say that upon a reconsideration of the question whether the Auditor-General should have audited the bills which he refused to approve, and whether such refusal was an abuse of his discretion, I am of the opinion I formerly expressed.

It was a crucial question put to the Attorney-General during the argument, whether, if the Minister of the Interior had expended the $30,000 appropriated for the Volcano road in a contract for building fifteen miles of it, he would be authorized to build the remaining fifteen with prison labor supported out of the $80,000 appropriated for the support of prisoners.  The Attorney General gave the answer which the logic of his position required, that the Minister would be authorized thereto.  It results from this that no "specific appropriation" is specific in amount, for it may be increased by as much more out of $80,-000, or other amount appropriated for prisoners' support, as the Minister may please to add to it.

It was claimed in argument that the drafts on the prisoners'

fund were not expenditures on the road, but for their support. Now, if the Auditor approved the bills, the prisoners would be employed on the road; if he disallowed them, the prisoners would not be worked there. So it is only a difference of form of words how the prisoners' support fund is applied to building the road. It seems to me the actual use of this fund for building the road cannot be cured by styling it a draft for the support of the prisoners. In order to proceed with an appearance of legality the Minister has been compelled to drop the system of credits for realizations for prison labor, because the realizations would be payments out of the appropriation for this road. When this was exhausted there were no longer realizations from prison labor. In a proper business transaction the cost of the prisoners would be drawn from the fund for maintaining them, at the same time that a like or suitable amount is charged for their labor against the appropriation for the work on which they were employed.

And I do not find a justification for this indefinite addition to the special sum allowed for this road in the general statute provision which directs the hard labor to which prisoners are sentenced to be applied to public works. It was not necessary to couple with it that it should be counted as a Government resource and realization, and accounted for as cash or credit to some account. The provision in Sec. 216, that prisoners may be let out to labor for private individuals, does not express a requirement that the proceeds shall not be rendered as a credit, but can any one doubt that it ought to be done?

For these reasons, I think the Auditor-General did not abuse his discretion in refusing to approve the bills in question.

*Attorney-General Peterson*, for petitioner.

*F. M. Hatch*, for respondent.

---

DECISION OF McCULLY, J., APPEALED FROM.

The case was heard on the petition and answer without the introduction of testimony. They are here set forth in full.

PETITION.

The petition shows unto this Court :

That the complainant herein, L. A. Thurston, is the Minister of the Interior for the Hawaiian Kingdom.

That George J. Ross is the duly appointed and commissioned Auditor-General of the Kingdom, and as such is charged with the auditing and approving the accounts and disbursements of the Hawaiian Government.

That Section 215 of the Civil Code reads as follows :  "All prisoners sentenced to imprisonment at hard labor shall be constantly employed for the public benefit on the public works, or otherwise, as the Marshal, with the approval of the Minister of the Interior, may think best."   And Section 8 of an Act entitled, An Act to amend the existing laws relating to the road tax, dated August 23rd, 1862, reads as follows :  " The Minister of the Interior is hereby empowered in his discretion to detail for labor on any public road, upon application to that purpose from any Road Supervisor, as many prisoners as he may deem necessary for such work ; said prisoners to be under the care of their usual overseers and subject to the Road Supervisor only as far as regards the mode of their employment."

That there are now about 300 prisoners sentenced to imprisonment at hard labor, confined in the various jails of the kingdom.

That in accordance with the mandate of said first above mentioned statute, and in pursuance with the discretion vested in him by the said above recited act of 1862. the said Minister has, during the twenty-three months of the biennial period now last past, caused all of such prisoners to be employed upon the public works, and more particularly upon public roads.

That during such period the cost of the food, clothes, guards and lunas necessary for the support, maintenance and guarding of all prisoners, including said prisoners in Hilo and Puna, has been charged to the appropriation entitled "support of prisoners."

That of said prisoners about fifty have been during said period, and now are, confined in certain jails situate in the Districts of Hilo and Puna in the Island of Hawaii, and in accordance with the law above mentioned, and under the discretion vested in the

said Minister, he has caused said prisoners to be employed upon the public roads located in the said Districts of Hilo and Puna, including the public road extending from Hilo to the Volcano of Kilauea.

That the records of the Interior Department show that since the commencement of the keeping of such records it has always been the custom to charge all of such expenses to such appropriations.

That the defendant hereto has, during the present biennial period and up to the present time, never refused to audit any bills incurred for the support or guarding of said prisoners or any other prisoners, until the presentation to him of certain bills for food furnished to said prisoners and the bills for salaries of guards of said prisoners, at Hilo and Puna, incurred during the month of January, 1890, a copy of which bills is hereunto annexed and marked "Exhibit A" and made a part hereof.

That said bills were legitimately and lawfully incurred by the Department of Government authorized to incur them, in accordance with the long-established precedent and custom of the said Department, and that the material and services therein described and claimed for have been furnished to the said Interior Department, and the amounts therein severally claimed are lawfully due to the several persons therein claiming the same. That there is no other appropriation available from which said bills can be paid, other than the said appropriation for the support of prisoners.

That by reason of the said refusal of defendant to audit said bills the complainant is unable to lawfully pay the same, thereby causing unnecessary and uncalled for injury and loss to the persons who have furnished such material and rendered such services, and preventing the complainant from properly carrying out the duties of his office of Minister of the Interior. That on or about the 24th day of February, 1890, the said bills were in due and regular course of business presented to the defendant hereto, and he was requested to audit the same, but defendant refused and still refuses to audit the same, claiming

that such bills should be charged to the specific appropriation for public work upon which the prisoners, concerning whom such bills have been incurred, are at the time being engaged upon. That there is a sufficient balance of the said appropriation for support of prisoners to pay the said bills if the same are properly audited.

That if said bills are not audited it will entail irreparable loss to the Hawaiian Government and to the public welfare by reason of the fact that the said Minister, and the other proper authorities charged therewith, will be unable to obtain guards and food for the care and maintenance of said prisoners unless they can be paid for. That the auditing and approving of said accounts is a duty attached to the office of the said George J. Ross, as Auditor-General, and may be legally required of him.

Wherefore your petitioner prays that a Writ of Mandamus may be issued and directed to the said George J. Ross, Auditor-General, commanding and enjoining him to audit and approve the bills and accounts according to schedule " A " hereto attached, or to show cause, if any he has, for not doing so before this Honorable Court at a day and a place to be fixed.

And your petitioner will ever pray, etc.

### ANSWER.

Said defendant, George J. Ross, by protestation, not waiving any right of exception to the insufficiencies of said petition nor to the right of said petitioner to maintain the same, for return and answer to such portions as he is advised it is necessary to answer, says :

That he admits that he is Auditor-General of the Kingdom. And he says that the auditing or refusal to audit any bill presented to him involves the exercise of his official judgment and discretion, and is not subject to judicial control by mandamus.

And for further answer this defendant says that he admits that the Minister of the Interior during the twenty-three months last past has caused all of the prisoners sentenced to imprisonment at hard labor, in all about three hundred in number, to be employed upon public works and public roads. That

he admits that the cost of food, clothes, guards and lunas necessary for the support, maintenance and guarding of all prisoners has been charged to the appropriation entitled "Support of Prisoners," but denies that the pay of lunas is properly so charged. That he admits that about fifty prisoners are now confined in certain jails in the Districts of Hilo and Puna, and have been employed upon public roads, including the public road extending from Hilo to the Volcano of Kilauea, and says that they have been employed in constructing the road last named. That he is ignorant as to the custom of the Interior Department in regard to charging such expenses to said appropriation. That he admits that he has not heretofore refused to audit bills for the support of prisoners until the presentation of the bills referred to in said petition.

He denies that said bills were legitimately and lawfully incurred by the Department of Government authorized to incur them in accordance with the long established precedent and custom of said Department ; and he says that when prisoners have been employed upon public works, the custom has been to make a charge against the appropriation authorizing such work for the labor of such prisoners, and to turn the same into the treasury as a Government realization, which the complainant in this case has not done.

That he admits that the materials and services claimed for have been furnished. That he denies that his refusal to audit said bills prevents the complainant from properly carrying out the duties of his office as Minister of the Interior. That he admits that on or about the 24th of February last, said bills were presented to him and he refused to audit the same. And he says that during the time covered by said bills, said prisoners were employed upon a public work, to wit, the construction of a road from Hilo to the Volcano of Kilauea, for which a special appropriation was made by the Legislature ; and he says that while so employed said bills should not be charged to the appropriation for the support of prisoners. And he further says that the appropriation last named, at the time said bills were presented to him, was exhausted.

And he denies all other allegations in said petition contained. Wherefore he prays said proceedings may be dismissed.

## By the Court.

It is first to be considered whether the auditing or refusal to audit any bill presented to him involves the exercise of his official judgment and discretion. Is it subject to judicial control by mandamus?

The terms "audit" and "refusal to audit" are here used in a sense generally employed and understood, but it seems to me a discrimination may be made with advantage in accuracy. It is not intended by the words "refusal to audit," a refusal to examine, literally to hear, the account presented, but a refusal to approve the account.

The petition in this case alleges in fact not a refusal to audit, but a refusal to approve certain accounts, and the Court is asked to command the respondent to approve them. To approve them for what and as what? The respondent defends his action by stating that the prison labor, concerning which the expenses in these bills were incurred, was performed upon a work for which a specific appropriation had been made, viz., the Volcano Road, and in effect, that the bills were drawn upon an appropriation to which they were not chargeable, viz., that for the support of prisoners.

Has the Auditor-General authority to consider and determine whether accounts are drawn properly on their appropriation items, and to refuse approval if he considers that they are not? We must find the answer in the language and scope of the statute which institutes the office of Auditor-General, (C. L. p. 668.) His duties relate to the receipts of moneys and to the disbursement of them. It is only with the latter that this case is concerned. By Section 6, the Minister of Finance is required from time to time to calculate the amount of moneys likely to become due and payable during a period not exceeding one month ensuing, setting it forth in a schedule under the same divisions and heads that shall have been employed in the appropriation thereof, which schedule is to be transmitted to the Auditor-

General. By Section 7, before countersigning any such instrument the Auditor-General shall ascertain if the sums therein mentioned are then (1) legally available for, and (2) applicable to the service mentioned in the instrument, and so finding shall countersign and return the instrument to the Minister. Provided, that in case he shall find that the sums mentioned, or any of them, are not then legally available or applicable to the service mentioned, he shall return the instrument to the Minister for correction, attaching thereto a statement of what he has found to be not legally available or applicable. By Section 9, every account shall be considered duly authorized that is in accordance with any existing law or regulation, or has been directly sanctioned by one or other of the responsible Ministers of the Crown and covered by any Appropriation Act in force at the time.

The only construction, in my view, to be placed upon the statute is that the Auditor has the function of determining if the account is drawn against the proper appropriation, and whether there is a sufficient unexpended balance thereof. For a broad illustration taken from two adjacent items in the Appropriation Bill, an account for "repairs and furniture of the Insane Asylum" would not be "applicable" to the appropriation for the "Honolulu Fire Department," and such an account being presented for audit would presumably not be countersigned. And presumably the Court, if applied to, would interfere by injunction to prevent countersigning. Is the act of the Auditor in allowing or disallowing an account in respect to its being "applicable to the service mentioned," ministerial, or one of judgment, opinion, discretion? I think there can be no doubt of its being of the latter description. In the case before us the Minister of the Interior, who is not to be presumed to be designedly making a draft which is not in accordance with the law, and seeking too to enforce it in court, differs in opinion from the Auditor-General. It is a matter then of judgment. In the case of *Castle vs. Kapena*, 5 Hawn., at p. 37, the Court say: "The Courts will not undertake to guide the judgment and discretion of public officers, which would be to assume the super-

vision of all branches of Government, but will only intervene
to compel the performance of purely ministerial duties." This
doctrine will not be controverted.    High on Extraordinary
Legal Remedies, in Section 42, says, that " it is a fundamental
rule underlying the entire jurisdiction by mandamus, and es-
pecially applicable in determining the limits to the exercise of
the jurisdiction over public officers, that in all matters requir-
ing the exercise of official judgment or resting in the sound dis-
cretion of the person to whom a duty is confided by law, man-
damus will not lie either to control the exercise of that discre-
tion, or to determine upon the decision which shall be finally
given." A ministerial duty it would be to audit, that is, to ex-
amine the account and approve or disapprove of it, and if the
Auditor should decline to do that, there is no doubt of the juris-
diction of this Court to issue its writ of mandamus to compel
him to the performance of his duty.   Thus the Court will com-
pel a Magistate or a Board to entertain an application legally to
be made, and give some decision thereon.   Quoting further
from the above cited section, " while it is proper by mandamus
to set in motion officers vested with powers of a discretionary
nature, and to require their action upon the matters officially
entrusted to their judgment and discretion, the Courts will in no
manner interfere with the exercise of their discretion nor at-
tempt by mandamus to control or dictate the judgment to be
given."

Against the rule so expressed and termed fundamental, the
counsel for the relator cites the case of *Wood vs. Strother*, 76
Cal., 545, and the authorities therein assembled. The case was
heard before the Commissioners of the Court. It holds that the
test for the issuance of a writ of mandamus to compel a board,
tribunal or other officer to do an act which he has refused to do,
is not whether the refusal involves the exercise of discretion, or
an exercise of judicial power, but whether it was a determina-
tion which the law intended to be final, and if not, whether
there is a plain, speedy and adequate remedy in the ordinary
course. The matter was against an Auditor of street contract
accounts, who by the Act was required before countersigning to

be satisfied that certain proceedings were legal. The Commission examining the defendant's return found from it that the proceedings were legal, and so the Auditor was wrong in his refusal to countersign the warrant, and there being nothing in that statute showing that the determination of the Auditor was intended to be final, advised that the order for the mandamus be affirmed.

In *Ex Parte Bradley*, 7 Wall., at p. 377, the language of the Court is: "When the act complained of rests in the exercise of discretion, the remedy of mandamus fails; but it must be a sound discretion and according to law." *Ex Parte Lecombe*, 19 Howard, 13; *Ex Parte Burr*, 9 Wheaton, 530. The ground of decision in Bradley's case was that the Court below had no jurisdiction to bar the relator for a contempt committed before another Court.

In *Village of Glencoe vs. The People*, 78 Ill., 382, upon a petition to the council for the appointment of time for holding an election; while the council had no discretion in the matter of ordering an election, it had discretion in selecting the time, and it was held that a postponement for an unreasonable time, such as would defeat the public purpose, would be an abuse of their discretion which warranted that it be controlled by mandamus. In *People vs. Superior Court*, 10 Wend., 286, a mandamus was issued to vacate an order granting a new trial when it appeared by the return that the party in whose favor a new trial had been ordered was chargeable with laches.

I will now discuss whether the case at bar comes within the description and principle of such as those wherein, although the act of the officer or subordinate tribunal is one of discretion and judgment, it may be controlled when it appears that there has been a want of jurisdiction, and abuse of discretion, or a plain or willful misconstruction of the facts.

The bills presented for audit are as follows :

Hawaiian Government. Interior Department.

Appropriation for Support of Prisoners, Dr.:

    To J. E. Staples, for services as jailor of the Volcano Road
    Jail, for the month ending January 31, 1890.............. $60 00

In like form and date to the same person as assistant jailor_____   30 00
In like form and date to M. Carminos as night watchman of this
    jail_____   40 00
Ditto to Kaiama for services as luna over prisoners on the Volcano
    Road for the month of January_____   35 00
Ditto to J. F. Brown for         "      _____   40 00
Ditto to C. Keanahou for         "      _____   30 00

Two other bills I will speak of hereafter.

The Auditor-General considers that these are bills of expenditures on the Volcano Road. *Per contra* it is contended that they are items of expense for the prisoners, who must have jailors and lunas, or overseers of work. There is, I believe, no separate appropriation for the payment of these, only the salary of Jailor of Oahu Prison being specially provided for. And that it is not to be considered where the prisoners, with their attendant expense, are employed, in pursuance of the requirement of the law that they be employed on public works and roads.

The settlement of the controversy must depend on the consistent interpretation of this law with the Appropriation Act. I do not think this is difficult, and my view is this: The law requiring prisoners to be employed in labor upon public works is the authority and direction of the Minister of the Interior as to the nature of the labor to which those sentenced to imprisonment at hard labor shall be put. It might have been a statute, for instance, requiring them to be employed within the prison premises in the manufacture of shoes. It was particularly necessary to make a statute provision for taking prisoners outside the prison premises. The same law (Section 216) provides that when prisoners cannot be well employed on public work, they may be hired out to private persons. For female prisoners the provision (Section 217) is, that they shall be employed in making mats, in sewing, in washing the prisoners' clothes, and in other suitable occupations as the Marshal may direct.

The law under which money is disbursed is entitled, An Act making *special* appropriations, etc. Under the head " Roads and Bridges" is, " Road from Hilo to Volcano, $30,000." This authorizes the expenditure upon that work of that sum, and no

one would claim that general drafts could be made on the Treasury for amounts in excess of that.

It cannot be denied that the allowance of these bills would be to apply further sums to this work from the special appropriation for the " support of prisoners." It is an obvious remark to be made, that the propriety of such a draft does not depend on the fact of the designated sum of $30,000 having been exhausted or not. If it should be correct now to apply money from the support of prisoners' fund, the road appropriation being exhausted, it would have been correct to do so during the whole period. The sum of the bills here presented is $550.40. A like sum for each of the twenty-four months of the biennial period would amount to $13,209.60. But small or great, or for a longer or shorter time, what should be so taken would be an addition from the one fund to the other. It is plain that the power to do so would enable the Minister of the Interior to practically make his own appropriation for every object in which prison labor may be employed. The expressed will of the Legislature, that the expenditure should be such a sum for such an object, would be overcome; no such item would represent a definite amount. It would be the granted amount plus the support of the prison labor upon it.

I hold, therefore, that the particular statute prescribing a sum to be expended on a public work is not controlled by the statute which generally designates the mode of working prisoners. The determination of the Auditor-General that the fund for the " support of prisoners" was not applicable to the payment of these bills, in this view, was not an abuse of discretion, and was not beyond his province or jurisdiction to be controlled by the Court.

The provisions of the Act of 1862 may be claimed to particularly justify the employment of prisoners without reference to a fund for the payment of the expenses appurtenant. I think this statute applies to the ordinary annual work on existing roads, and leaves the question of payment to be determined by other statutes. They are roads in charge of the Road Supervisor. He is permitted to make application for this description

of labor.  There is nothing which imports that it is not to be paid for out of the funds for the road making.  In the case before us a new road is provided for.  It is as distinctly a separate public work as would be the erection of a new public building.  The bills presented are for a separate set of jailors and superintendents required in working prisoners on this road.  The reasoning I have applied to the construction of Section 215, in my view, equally applies here.

The two other bills are admitted to be for sustenance of the prisoners while employed on the Volcano road.  Standing by themselves they might be considered payable out of the fund for the support of prisoners, but in view of the fact, brought to the Auditor's knowledge, that the result would be an application of so much money to the Volcano road, in lieu of charging the labor at the statute valuation of fifty cents per day to the road appropriation, and making no charge for the sustenance, these bills may be classed with the others.

In respect to the custom, shown by the pleadings, to charge such expenses as these bills represent to this support of prisoners' appropriation, and the fact that the respondent has during the present biennial period so allowed them up to the present refusal, I have only to say that when a judicial interpretation is asked it must be based upon principles.  If practice hitherto has not conformed to the law strictly construed, this cannot set aside the law.  From time to time the Courts are called upon to correct loose practice.  It is not surprising that the examination of an Auditor (an office of recent date in this country) should discover irregularities.  The office was instituted for the purpose of scrutiny, and an Auditor who does not audit may as well not exist.  The power given to this officer is undoubtedly a high one.  By Section 19 of the Audit Act it is provided that no payments shall be made by the Minister of Finance, salaries excepted, unless the accounts therefor shall have been previously countersigned by the Auditor.  To enable the Auditor to maintain this high and quasi judicial position, he is appointed to hold his office during good behavior, only to be removed for incompetency or misbehavior by the King with the

advice of the Cabinet Council upon the address of the Legislative Assembly, and his salary cannot be diminished during his continuance in office. It is equal to the salary of a Minister or a Justice of the Supreme Court.

The relator complains that by the refusal of the defendant to approve these bills he is prevented from properly carrying out the duties of his office as Minister of the Interior, and it was warmly contended in argument that the Auditor was unwarrantably assuming a power to control the Government and to arrest its action. Yes, the unauthorized expenditure by the Government or any branch of it he may arrest. It was even claimed that the fact that the bills were presented by a Crown Minister was a sufficient warrant for the allowance. But not so do I construe the scope of the Audit Act. The judgment that claims are made upon funds legally available or applicable is the judgment of the Auditor for himself.

Finally, the question may be asked—it was implied here—what is the Minister to do with the prisoners when there are no unexpended appropriations for roads and public works? I answer that it is not for the Auditor to join with the Minister in enlarging the expenditure granted by the Legislature to certain works. In this instance it has not been shown that the Minister is in this position. The Auditor has to do his duty on cases as they arise. If there is or should be a disproportion between the amount of prison labor at the service of the Government and the amount of public work provided for, it may be a matter for the Legislature to consider. The action of the Auditor in this instance may call attention to the matter.

The prayer for a writ of mandamus is denied.