### VAN BUREN v. THE PEOPLE.

PRACTICE IN CRIMINAL CASES—SPEEDY TRIAL—THREE TERMS.

The lapse of three full terms of court after the issuance of a *capias* and arrest of the defendant without an application to postpone or delay the trial entitles him to his discharge, notwithstanding he has been out on bail.

*Error to the District Court of Arapahoe County.*

Messrs. WELLS, TAYLOR & TAYLOR and Mr. N. B. BACHTELL, for plaintiff in error.

THE ATTORNEY GENERAL and Mr. F. P. SECOR, of counsel, for the People.

BISSELL, J., delivered the opinion of the court.

Myron Van Buren, the plaintiff in error, was indicted in the district court of Arapahoe county and charged with having obtained $1,500 from Mary Snitjer by making divers and false representations concerning the value of the security which he gave for the payment of the money. The loan

was not paid. It resulted in this prosecution. A slight narration of the circumstances is essential. Miss Snitjer and her sister had some idle money. T. S. Schlessinger and Van Buren composed the firm of Schlessinger & Co., and were engaged in procuring loans and doing generally those things which are incident to a brokerage and real estate business. The firm procured loans for other parties, which were promptly paid. Subsequently Van Buren went with Schlessinger to Miss Snitjer to procure some money for his own use. There is a conflict in the testimony concerning all of the details of the transaction. We shall accept the verdict of the jury, and simply state the facts as they must be assumed to exist according to that verdict, without the purpose to express any conviction on our part respecting them. Schlessinger had been in the mill business in Gilpin county for some time, and when the loan was made had considerable property. He was worth about $50,000. In the course of his business he bought lands for the timber, which he cut, reduced to lumber and marketed. One of the tracts which he purchased was a quarter section in section 16, township 2, near what is called "Tucker's Gap." He got this land of Beaman in 1889. A deed was executed at that time, but at his request it was afterwards deeded by Beaman to Van Buren, the defendant. This was shortly before the money was borrowed from Miss Snitjer. The parties went to Miss Snitjer with a security executed on the land, and with a note signed by Van Buren, which was indorsed by Schlessinger either before the note was taken to the house or indorsed there when the loan was made. This matter is in dispute and unimportant. Van Buren stated the quarter section was a ranch or farm. Miss Snitjer's understanding was that it was farming land of the value of four or five thousand dollars, and adequate security for the amount of the loan. Miss Snitjer testified the loan was made on the strength of this real estate security, and not on the strength of Schlessinger's indorsement, though this question was left to the jury under instructions which would

guard their finding in respect to this matter. At the trial it was shown the land was nothing but a piece of rocky, mountainous soil, scarcely capable of cultivation, and of very little, if any, value. The whole case turned on the character of the representations respecting the quality and value of the land, and the reliance which Miss Snitjer placed on them, and their truth or falsity. All these matters were submitted to the jury, who found the defendant guilty.

There is nothing in the record which would lead us to disturb the verdict because it is unsupported by the evidence. Sundry errors, however, are laid and discussed by counsel.

The first respects the substance of the indictment. It is claimed to be insufficient in its statement of the details of the transaction. The defects are not specifically pointed out, nor is the contention respecting it supported by the citation of either precedent or authority. It does not appear to conflict with the settled law touching these matters, nor do we find in the reasons assigned any ground for adjudging it an inadequate pleading. We therefore conclude it to be good, and the error not well laid.

During the progress of the trial, a good deal of evidence was introduced respecting Schlessinger's financial ability and solvency. The defendant sought to show that he was solvent when the note matured. Bankers and business men were called and interrogated about this matter. The testimony was excluded and counsel assign the exclusion as error. There are two answers to the contention. In the first place Schlessinger's financial condition at the time of the maturity of the note in no manner tended to disprove the charge nor did it bear on the question of the intent. Of course, Schlessinger's financial condition as an indorser was a proper matter of proof when it was confined to the time of the transaction. This evidence would be of vital consequence in the settlement of the question as to Van Buren's intent when he made the statements, and as to the reliance Miss Snitjer placed on them when she made the loan. They were admissible for no other purpose, and all legitimate testimony in that direction

was admitted by the court.   The form in which the questions were put would also make them open to objection, and the court could very properly have excluded the testimony without regard to the other consideration.   Intimately associated with this proposition is the error laid on the instructions. The principal objection is based on one wherein the jury were told, "if they found from the evidence that Miss Snitjer was induced to part with her money solely by reason of Schlessinger's indorsement and that she would not otherwise have parted with it, they must find for the defendant." Counsel insists the use of the word "solely" must have misled the jury, and of necessity makes the instruction erroneous. We cannot so conclude.   The jury were virtually told if the indorsement was the inducement which led Miss Snitjer to part with her money, the defendant must be acquitted. Coupled with the other parts of the charge, which in plain terms told the jury that even though they found the representations to have been made and to be false, they must also find the prosecuting witness relied on them and parted with her money by reason of such reliance, it becomes an unobjectionable instruction and a fair statement of the law.   Taken as a whole, the charge was eminently fair, exceedingly guarded, and a clear expression of the rules by which the jury should be guided.

There is another matter of much graver importance, which must result in the discharge of the prisoner, whatever may be our convictions respecting his guilt or innocence.   The indictment was found before the January term of 1892, and a *capias* issued for the arrest of the defendant.   He was brought in at the next term and furnished with a copy of the indictment and a list of the jurors.   He does not seem then or ever afterwards to have been called on to plead, nor was an issue ever formed between the people and the defendant. This is simply stated by way of history, and not as a basis on which to predicate the subsequent discussion.   The defendant was not tried at that January term, nor at the following terms then ensuing, to wit, the April term, the September term, and the January term of 1893.   The people made no appli-

cation to continue the cause from term to term. There is no affidavit in the record, nor was any motion made based on a showing to continue the case because of the absence of witnesses. It thus appears four full terms elapsed after the finding of the indictment before the case was called for trial. Three full terms elapsed after the issuance of the *capias* and the arrest of the defendant without application on the part of the people to postpone or delay the trial. These facts present the very simple question whether, under section 1616 of the General Statutes of 1883, the defendant was entitled to his liberty. This whole matter with reference to persons who are committed without bail was very fully discussed in an opinion rendered by this court in 1893. *Cummins v. The People,* 4 Colo. App. 71.

Reviewing then all the authorities which were accessible, the court concluded that a failure of the people to try a defendant within the time specified by that act entitled him to his discharge. The only question is whether the same rule applies to those who are out on bail in case the people permit three terms to elapse without a statutory application for a continuance. We cannot hold otherwise. The section is plain, definite in its terms, and evidently provides for two classes of cases ;—one where the defendant is not admitted to bail, and the other where he is out on recognizance. In the one case, not more than two terms must be permitted to elapse, and in the other a third may go by, if the people apply for a continuance because of the absence of witnesses. The provision that the defendant must be set at liberty if not tried within the designated time applies in the one case as well as in the other. The two classes of cases are not so totally distinct nor so separately provided for in the section as to admit of any other construction. The reasons which prevail in the first case are equally cogent in the second. The decisions of the supreme court and our conclusions in the *Cummins Case* are decisive.

The judgment must be reversed and sent back with directions to the district court to discharge the defendant.

*Reversed and remanded.*