## In re MURPHY.

### (Circuit Court, D. Massachusetts. May 18, 1898.)

### No. 1,833.

1. HABEAS CORPUS—ISSUANCE OF WRIT.
   Where a petitioner, serving a sentence of a state court, has delayed nearly two years to apply for a writ, and his right of appeal in the state court is not yet barred, habeas corpus will not issue unless his case is clear.

2. FEDERAL QUESTION—WHEN PRESENTED.
   The action of a judge of a state court in erroneously sentencing one convicted of crime under a statute not applicable to his case presents no question for the federal court.

3. SAME—EX POST FACTO LAWS.
   When a statute providing for the sentence to prison of persons convicted of crime has been construed by the highest state court to apply to offenses committed prior to its enactment, the question whether it violates any provision of the federal constitution is directly in issue, on habeas corpus, to release one sentenced thereunder for a crime so committed.

4. EX POST FACTO LAWS—CONSTRUCTION OF STATUTES.
   In order to render legislation unconstitutional as ex post facto, it is not necessary to show that it must be detrimental to all persons charged with offenses; it is sufficient that it materially alters their condition in a manner which may be detrimental to some.

5. SAME—INDETERMINATE SENTENCE LAW.
   The Massachusetts indeterminate sentence statute (St. 1895, c. 504, §§ 1–3), declaring that the court "shall not fix the term of imprisonment," if taken literally, is unconstitutional, if applied to offenses committed prior to its enactment.

6. SAME.
   Quære, whether the indeterminate sentence law of Massachusetts (St. 1895, c. 504, §§ 1–3), which is applicable to all sentences pronounced after its enactment, regardless of what the law was when the offense was committed, is invalid as an ex post facto law.

7. HABEAS CORPUS—PRACTICE ON APPEAL.
   A writ of habeas corpus was denied, but, there being a constitutional question of great doubt involved in the application, the petitioner was given an opportunity to apply for an appeal to the supreme court, under rule 34, with an intimation that thereupon the order would be amended and a writ directed to issue, to be discharged upon its return, with leave to apply for admission to bail pending the appeal.

Brandeis, Dunbar & Nutter, Ezra R. Thayer, and Edward F. McClellen, for petitioner.

J. M. Hallowell, Asst. Atty. Gen., for respondent, Bridges.

PUTNAM, Circuit Judge. This is an application for a writ of habeas corpus, heard on the return of an order to show cause why a writ should not issue. The petitioner is in prison, under a criminal sentence of the superior court of the state of Massachusetts,

passed on him May 28, 1896, for a term of not less than 10, nor more than 15, years. It is conceded that, if the sentence was erroneous, the laws of the state gave him a remedy by a writ of error, which is not yet barred; and also nearly two years of his imprisonment have expired without his asking for a writ of error or other relief, prior to the petition at bar. In view of these facts, it is apparent that there are no special circumstances requiring the issue of a writ of habeas corpus, unless his case is clear. When the petitioner's offense was committed, the following statutes were in force in Massachusetts:

"Whoever commits larceny by stealing, of the property of another, money, goods, or chattels, or a bank note, bond, promissory note, bill of exchange, or other bill, order, or certificate, or a book of accounts for or concerning money or goods due or to become due or to be delivered, or a deed or writing containing a conveyance of land or any other valuable contract in force, or a receipt, release, or defeasance, or a writ, process, or public record, if the property stolen exceeds the value of one hundred dollars, shall be punished by imprisonment in the state prison not exceeding five years, or by fine not exceeding six hundred dollars and imprisonment in the jail not exceeding two years; or, if the property stolen does not exceed the value of one hundred dollars, shall be punished by imprisonment in the state prison or jail not exceeding one year, or by fine not exceeding three hundred dollars." Pub. St. c. 203, § 20.

"Every officer in charge of a prison or other place of confinement shall keep a record of the conduct of each prisoner in his custody whose term of imprisonment is not less than four months. Every such prisoner whose record of conduct shows that he has faithfully observed all the rules, and has not been subjected to punishment, shall be entitled to a deduction from the term of his imprisonment, to be estimated as follows: Upon a sentence of not less than four months and less than one year, one day for each month; upon a sentence of not less than one year and less than three years, three days for each month; upon a sentence of not less than three years and less than five years, four days for each month; upon a sentence of not less than five years and less than ten years, five days for each month; upon a sentence of ten years or more, six days for each month. When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which the deduction shall be estimated. Each prisoner who is entitled to a deduction from the term of his imprisonment, as aforesaid, shall receive a written permit to be at liberty during the time thus deducted, upon such terms as the board granting the same shall fix. Said permits shall be issued as follows: To prisoners in the house of industry, jail, or house of correction of Suffolk county, by the board of directors for public institutions; to prisoners in the other jails and houses of correction, by the county commissioners of the several counties; to prisoners in the state prison and in the reformatory prison for women, by the commissioners of prisons; to prisoners in the state workhouse, by the trustees of said workhouse. The board issuing a permit as aforesaid may at any time revoke the same, and shall revoke it when it comes to their knowledge that the person to whom it was granted has been convicted of any offence punishable by imprisonment." Pub. St. c. 222, § 20.

The petitioner was charged with, and convicted of, several offenses in the same indictment; so that the maximum term for which he was imprisoned does not exceed the penalty permitted by the statutes which were in force when his crimes were committed. But, by the law as it then stood, his term of imprisonment was fixed by the court, and the determination of its length was a judicial act, subject, of course, to his option to avail himself of a permit to be at liberty, as provided by the statute cited, if he entitled himself

thereto. This clearly did not operate to limit the term of his imprisonment except at his own will. So it could not work to his prejudice, as it might possibly be conceived to be against the interest of a prisoner to be cast temporarily on the community at large against his own election, under circumstances which permitted him to be recalled at some indefinite period, also against his own election.

At the time the petitioner was sentenced the following statute was in force:

"Section 1. When a convict is sentenced to the state prison, otherwise than for life, or as an habitual criminal, the court imposing the sentence shall not fix the term of imprisonment, but shall establish a maximum and minimum term for which said convict may be held in said prison. The maximum term shall not be longer than the longest term fixed by law for the punishment of the offence of which he is convicted, and the minimum term shall not be less than two and one half years.

"Sec. 2. At any time after the expiration of the minimum term for which a convict may be held in the said prison under a sentence imposed as aforesaid, the commissioners of prisons may issue to him a permit to be at liberty therefrom, upon such terms and conditions as they shall deem best, and they may revoke said permit at any time previous to the expiration of the maximum term for which he may be held under said sentence. No such permit shall be issued without the approval of the governor and council, nor unless said commissioners shall be of the opinion that the person to whom it is issued will lead an orderly life if set at liberty. The violation by the holder of a permit issued as aforesaid of any of the terms or conditions thereof, or the violation of any law of this commonwealth, shall of itself make void such permit.

"Sec. 3. When any permit issued as aforesaid has been revoked, or has become void, said commissioners may issue an order authorizing the arrest of the holder of said permit and his return to said state prison. The holder of said permit, when returned to said prison, shall be detained therein according to the terms of his original sentence; and in computing the period of his confinement, the time between his release upon said permit and his return to the prison shall not be taken to be any part of the term of the sentence." Acts 1895, c. 504.

The petitioner was not sentenced as an "habitual criminal."

The question at once arises whether the act of 1895 is to be construed to apply to prior offenses. If not, the action of the court which sentenced the petitioner was a mere error, raising, in no event, any question for this court. But it was held in Com. v. Brown, 167 Mass. 144, 45 N. E. 1, that the statute is to be construed to apply to all sentences imposed after it came into force. Therefore the question whether it violates any provision of the constitution of the United States comes directly in issue.

With reference to what constitutes ex post facto legislation, it is not necessary, for this case, to refer to any authority except the discussion in Kring v. Missouri, 107 U. S. 221, 228–230, 2 Sup. Ct. 443. It is plain from that discussion, and also on fundamental principles, that, in order to render legislation unconstitutional as ex post facto, it is not necessary to show that it must be detrimental to all persons charged with offenses. It is sufficient that it materially alters their condition in a manner which may be substantially detrimental to some.

At the outset, the act of 1895 declares in its letter that the court "shall not fix the term of imprisonment." If this were to be taken

literally, it would clearly be unconstitutional if retroactive, because it would deprive a person charged of the right to a judicial determination of his sentence, given by the law existing when the offense was committed, as we have already shown. But the supreme judicial court of Massachusetts has said that it is not to be thus taken, notwithstanding the fact that, by the effect of the act, the term of actual imprisonment is practically fixed by the executive officers of the state. Oliver v. Oliver, 169 Mass. 592, 594, 48 N. E. 843. Under the Public Statutes, in force when the petitioner's offenses were committed, he could, by his own good conduct, entitle himself, as a matter of right, to a permit to be at liberty; and, although the permit would have been revocable at will, it would seem to have been a legal right of value in the eyes of the law, on the same principle that an employment is recognized at law as a thing of value to both employé and employer, even when terminable at the option of either. In addition, the option whether or not to revoke the permit was vested in a single executive board, while, under the act of 1895, no permit can issue without the approval of two executive boards; the practical result of which is that, under the later statute, the prisoner has the burden of securing a double approval before he can obtain his liberty. Under the act of 1895, he cannot entitle himself, as a matter of right, to a permit, but the whole is a matter of option on the part of the executive boards, to be exercised without any explanation or any reason given pro or con. Moreover, under that act, other important conditions were added which would permit the recall of a permit, and still others which would revoke it absolutely. The most serious new provision is that the act of 1895 directs that, if a permit is revoked, no portion of the time the prisoner may have been at liberty under it shall be taken to be any part of the term of his sentence.

It is true that, under the sentence imposed on this petitioner, there is a possibility of his going at liberty sooner than could have happened under the provisions of the Public Statutes, if, under them, he had been sentenced for the maximum period of 15 years, because no commutation for good behavior under those statutes could have reduced the period of imprisonment to 10 years; yet who can say whether, and, if yes, how much, the intended, and, probably, for the mass of criminals, the actual, leniency of the new system operated to influence the court, in the case at bar, to impose a maximum term longer than the fixed term would otherwise have been?

Therefore there is, on the whole, much difficulty in holding the act of 1895 constitutional as a retroactive statute. But the supreme judicial court of Massachusetts, in Com. v. Brown, 167 Mass. 144, 45 N. E. 1, already referred to, at page 146, 167 Mass., and at page 1, 45 N. E., construes this statute in connection with the body of the Massachusetts legislation on this topic, and declares that, as a whole, it concerns a policy familiar in that state. The court apparently regards it all as a matter of prison discipline, which affects no substantial rights. It is true the court states that the question was not argued, but, in the aspect in which it is put by that court, it is one peculiarly for local judicial tribunals. This fact, and the lack of

specialty in the circumstances of the case to which we have referred, which operate against the petitioner almost with the effect of laches, in connection with the numerous cautions given by the supreme court with reference to cases where writs of error may be sued out, the latest of which is Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, lead us to conclude that we ought to leave the petitioner to his remedy in the usual course.[1] We have, however, great doubts about the constitutionality of the statute of 1895, as a retroactive one; and we have explained our doubts in order to show that we ought to give the petitioner an opportunity to apply to give bail, if he desires, pending an appeal to the supreme court. Therefore, to enable him to do this under Sup. Ct. Rule 34, if the petitioner applies therefor, we will amend our order, and direct a writ to issue, with the expectation that, on its return, we will order the discharge of the writ, and thereupon consider any application that may be made for admitting to bail, pending an appeal, if one is taken. The petition is denied, without costs.

---

[1] Note by the Court. See Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805.