STATE *ex rel.* SIMS v. CARUTHERS, *Judge.*

No. 410.   Opinion Filed November 19, 1908.

(98 Pac. 474.)

1.   MANDAMUS—Other Adequate Remedy. A peremptory writ of mandamus will be denied where the petitioner has a plain and adequate remedy in the ordinary course of the law.

2.   CRIMINAL LAW—Trial—What Law Governs. The law in force in the Indian Territory at the time the indictment was returned against the accused shall govern the trial and disposition of such case.

3.   CRIMINAL LAW—Public and Speedy Trial—Constitutional Provisions. The provisions of the sixth amendment to the Constitution of the United States, guaranteeing the accused a speedy public trial, were applicable to the Indian Territory.

4.   MANDAMUS—Office of Writ—Dismissal of Criminal Action. The writ of mandamus is a proper remedy to enforce the dismissal of a criminal action where the right to a speedy trial has been denied, in cases where the delay is caused by the abuse of discretion by the trial court.

5.   CONSTITUTIONAL LAW—Ex Post Facto Law. No ex post facto law will be enforced against the accused which would in any way be prejudicial to his rights.

6.   MANDAMUS—Parties Plaintiff—Use of Name of State. In mandamus proceedings to enforce a private right, the real party in int rest should be named as plaintiff, and such proceedings should not be entitled in the name of the state on the relation of such party.

7.   STATUTES—Construction—Statute Adopted from Another State. Whenever Congress, in legislating for the Indian Territory, borrowed from the statutes of a state provisions which had received in such state a known, defined, and settled construction before such act of Congress was passed, that construction should be deemed to have been adopted by the courts over which such legislation extended; and the provisions of such laws should be construed as they were understood at the time in the state from which the same were borrowed.

8.   CRIMINAL LAW—Trial—"Speedy Trial." By a speedy trial, as provided for by sections 2192 and 2193 of Mansfield's Digest of the Laws of the State of Arkansas, is meant a trial conducted according to the fixed rules, regulations, and proceedings of law, free from vexatious, capricious, and causeless delays caused or brought about

by the officers of the state or county upon whom devolves the duty of the prosecution and determination of criminal cases; and, unless good cause to the contrary is shown, every person indicted for crime under the law in force in the Indian Territory prior to statehood is entitled to be tried before the end of the third term of the court, in which the indictment is pending, held after the return of the indictment, unless the delay happens on the application of the accused.

(Syllabus by the Court.)

Original action in mandamus by the state, on the relation of Bunner Sims, against John Caruthers, judge of the Ninth judicial district. Mandamus denied.

This is an original action in mandamus, brought in this court under the provisions of section 12, art. 1, c. 28, p. 283, of the Session Laws of the state of Oklahoma passed in the year 1908 (Laws 1907-08), and article 33, c. 66, Wilson's Rev. &. Ann. St. Okla. 1903.

Relator was indicted by the grand jury of the United States District Court in and for the Western District of Indian Territory, at the February, 1907, term of said court, sitting at Okmulgee, in three cases, charging him with the crime of assault with intent to kill. Under the terms of the enabling act and the Constitution of the state of Oklahoma, the district court of Okmulgee county became the successor of the United States District Court of the Western District of Indian Territory for the trial of all criminal cases then pending in said United States Court for the Western District of Indian Territory at Okmulgee.

The relator, by his attorneys, Messrs. Stanford & Cochran, on the 5th day of October, 1908, filed his petition and motion for a writ of mandamus in this court, alleging that, at the February, 1907, term of the United States Court in and for the Western District of Indian Territory, sitting at Okmulgee, three separate indictments were found and returned against the relator by the grand jury of said court, charging the relator with the crime of assault with intent to kill, and being numbered in said court, respectively, Nos. 993, 994, and 995; the first, charging an assault with intent to kill Lucy Yahola; the second, assault with intent to kill Peggie Scott; and the third, assault with intent to kill John Tiger. That since said February, 1907, term of said

court, two other and subsequent terms of said United States Court for the Western District of Indian Territory have been holden at Okmulgee, in said district; that is to say, the May, 1907, term, and the November, 1907, term. That since the 17th day of November, 1907, there have also been holden three terms of the district court in and for the Ninth judicial district of the state of Oklahoma, for Okmulgee county, to wit: The December, 1907, term; the January, 1908, term; and the April, 1908, term. Said terms were regularly fixed by order of the Supreme Court of this state. That relator was, at the February, 1907, term of the United States Court for the Western District of Indian Territory, admitted to bail; and that since said term of court he has been, and now is at liberty, upon bond for his appearance at the district court for the Ninth judicial district of the state of Oklahoma; that five separate terms of court have been held since the said February, 1907, term of said United States Court for said district, at any of which terms the relator might have been placed upon trial for any and all of the offenses charged against him in said indictments. That no effort of any kind was made by the prosecution to bring either, or all, of said cases to trial; and that relator has been present at each and every term of said courts. That at the April term of said district court of the Ninth judicial district of the state of Oklahoma, for said county, the relator filed in open court his motion in writing praying that he be given a trial upon all of said indictments against him, or that, failing to bring said cases to trial, the court enter an order dismissing each of said cases, and that he be discharged. That this motion was heard in open court, before the defendant herein as presiding judge of said court. That the county attorney of said Okmulgee county made no showing whatever as to the reasons for the delay in bringing said charges against relator to trial at said term, or any term prior thereto, and, that no evidence was introduced showing cause for delay in bringing the relator to trial upon said indictments. That the criminal calendar for the September, 1908, term of said district court has been set, and there appears on said calendar all of the cases above enumerated against relator, and

that said cases are set down for trial in said court. That none of the delays in the trial of said cases were caused by the relator. That he has, at all times, been ready for trial, and that none of the delays have been at the request of either the relator or his attorneys. That none of the delays have been occasioned by want of time on the part of the court to try said cases, or either of them; and that at each of said terms of said courts other and less important business has been disposed of, including the trial of many civil cases. Relator prays that a peremptory writ of mandamus issue from this court, directed against the Honorable John Caruthers, judge of the district court of the Ninth judicial district of the state of Oklahoma, commanding him to dismiss the three separate cases pending in said court against the relator. Relator filed in this court, in support of his petition and motion, the affidavit of the Honorable H. E. P. Stanford, one of his attorneys, in which he swears the facts stated in the petition herein are true.

To this petition the defendant, on the 5th day of October, 1908, filed his answer, under oath, in substance as follows: That he admits as true that said relator was indicted, as averred in his petition herein, and that two terms of said United States Court for the Western District of Indian Territory had been held in said district prior to the admission of this state into the Union; that by operation of law the district court of the Ninth judicial district, state of Oklahoma, became the successor of the United States Court for the Western District of Indian Territory, in so far as the cases of the United States against the relator are concerned; and that three terms of the district court of the Ninth judicial district of the state of Oklahoma have been held at Okmulgee since the admission of the state into the Union. And, further answering, defendant says: That while three terms of said last-named district court had been fixed and set for said county, only two terms were held wherein it would have been possible for relator's cases to have been tried for the reason that the first term of said court, which was set for December, 1907, was for the purpose of getting the machinery of the state courts

in said county in operation, and that at this term no jury was summoned, nor was the relator present.   That at the January, 1908, term of said court, there was pending on the docket of said court, in said county, a large number of criminal and civil cases, amounting to several hundred of each.   That it was a physical impossibility, and beyond the power of mental achievement, to have disposed of all such cases which were then pending in said court at Okmulgee, including the relator's cases, during the time allotted by order of the Supreme Court for said term in said county.   That the records of said court show that the witnesses on behalf of the state were subpœnaed in relator's cases to be present at said court at Okmulgee on February 10, 1908, being the day on which relator's cases were set for trial in said court. That on February 10, 1908, the petit jury, which had been summoned to serve for said term, was discharged by order of said court on account of an epidemic of smallpox at that time prevailing in the town of Okmulgee ; that it was deemed necessary to preserve the public health and safety for said jury to be so discharged.   That the records do not show that relator was present at said term, ready and demanding trial of his cases; nor does it show that he objected to the discharge of the jury.   That at the January, 1908, term, relator's attorney, Hon. H. E. P. Stanford, was a member of the Senate of the State of Oklahoma, and was only present at said term of court one or two days, and was not present on February 10, 1908, the day relator's cases were set down for trial, and that neither said attorney nor relator wanted a trial, or were ready for trial on said date.   Respondent denies that at the April, 1908, term of said district court, the motion demanding a trial by relator was argued in said court, or that said court refused to enter an order of record, either dismissing him or overruling said motion.   That, under a rule of said court, the hearings of motions were held on Saturdays and Tuesdays of each week during the term of said court.   That the filing of all motions is noted by the clerk on the appearance or motion docket of said court, and the party desiring to have the same considered by the court must give notice to the opposing party in

writing not later than 12 o'clock noon the day preceding the motion day upon which such motion is to be heard. That on the day relator's motion was filed the said court was engaged in the trial of a murder case, and that said case consumed about nine days of said term. That there are pending on the docket of said court for Okmulgee county hundreds of criminal and civil cases; that, in addition to Okmulgee county, there are three other counties within said judicial district; that in all of said counties the business of said court is very heavy; that he is the only judge presiding for said judicial district, and that as much business has been disposed of in said court as was possible; that relator's cases have not been disposed of for want of necessary time to do so, that his cases are set down upon the trial docket of said court for Tuesday, October 7, 1908; that relator can then get a trial of said cases if he so wishes; and that the relator has not been prejudiced.

In support of respondent's answer herein is offered a certified copy of the record of said courts pertaining to the action of said courts in the cases of the relator, also the verified statement of Joe Eaton, county attorney of Okmulgee county, and the certificate of U. T. Whitmer, district clerk, certifying that at the opening of the September, 1908, term, there was pending in said court 419 criminal cases and 499 civil cases, and that there was filed in said court since the 16th day of November, 1907, more cases, both civil and criminal, than it has been possible to try

To the answer of respondent, relator files reply, in substance, as follows: He admits that no jury was summoned at the December, 1907, term, but urges that the relator should not be prejudiced in his rights, because the Supreme Court of the state had designated said December term as a regular term of said court, and a jury could have been summoned. He admits that the fourth paragraph of respondent's answer sets forth the facts concerning the number of civil and criminal cases pending in said court at that time, but says that among the cases

disposed of at said term were many of more recent date and less important than the cases of the relator; admits that the jury was discharged, as set forth in paragraph 5 of respondent's answer, but alleges that at said term many cases of later date and less importance were disposed of than those pending against relator; that ample time was had for the trial of relator's cases before the jury was discharged. That the motions of relator were not separately argued, but that a similar motion was argued in said court in a case pending against one Joe Hill, and that by agreement the argument made in the Hill Case was to apply to the cases of relator, and that upon the same record proof the cause against said Hill was dismissed; but that the said court failed and refused to dismiss relator's cases.

Exhaustive briefs were filed by both parties, and the case was fully and ably argued by counsel on both sides.

Before deciding this case, we desire to call attention to the title thereof. This action is entitled "The State of Oklahoma ex rel. Bunner Sims v, John Caruthers, Judge of the Ninth Judicial District of the State of Oklahoma." Section 4224, Wilson's Rev. & Ann. St. Okla. 1903, provides that all actions must be prosecuted in the name of the real party in interest, unless otherwise provided, but this case does not come within the exceptions named in the statutes. Therefore, in a mandamus proceeding to enforce a private right, the real party in interest should be named as plaintiff, and such proceedings should not be entitled in the name of the state on the relation of such party.

*Stanford & Cochran,* for relator.—Mandamus as the proper remedy: *Ex parte Cole,* 28 Ala. 50; *Palmer v. Jackson, Judge,* (Mich.) 50 N. W. 1086; *State v. Johnson, Judge,* (Wis.) 80 N. W. 1184; *Schwartz v. Berry, Judge,* (Mich.) 51 N. W. 279; *Ex parte Scott,* 19 Ohio St. 581; *State v. Burgoyne,* 7 Ohio St. 153; *Gordon v. Longest,* 16 Peters (U. S.) 97; *Watson v. Judge,* 40 Mich. 729.

On the question of what constitutes a "speedy trial": Mansfield's Digest of the Statutes of Arkansas, c. 46, §§ 2191, 2192, 2193; *People v. Marino* (Cal.) 24 Pac. 892; *State v. Kuhn,*

154 Ind. 450; *Newland v. People,* 221 Ill. 166; *Van Buren v. People,* 7, Colo. App. 136; *State v. Sims,* 1 Overt. (Tenn.) 253; *United States v. Fox,* 3 Mont. 512.

*Charles West,* Atty Gen. and *W. C. Reeves,* Asst. Atty. Gen. for respondent.—

Mandamus not the proper remedy: Wilson Rev. and Ann. St. Okla. 1903, § 4885.

On what constitutes a "speedy trial": *Stewart v. State,* 13 Ark. 720; *Nixon v. State,* 2 Smedes & M. (Miss.) 497, 41 Am. Dec. 601; *State v. Huting,* 21 Mo. 469; *Ex parte Stanley,* 4 Nev. 113; *State v. Endsley,* 19 Utah, 478; *Commonwealth v. Adcock,* 8 Grat. 661; *In re Edwards,* 35 Kan. 99, 10 Pac. 539; *People v. Ruloff,* 5 Parker C. R. 47; 12 Cyc. 500; *Clark v. Commonwealth,* 29 Pa. St. 129; *Beavers v. Haubert,* 198 U. S. 86, 49 L. Ed. 950; *Com. v. Jailer,* 7 Watts (Pa.) 366; *People v. Vosale,* 120 Cal. 168, 52 Pac. 305; *State v. Euke,* 85 Iowa, 35; *Patterson v. State,* 49 N. J. Law, 326; *Ex parte Turman,* 26 Tex. 708, 84 Am. Dec. 598.

BAKER, JUDGE. (after stating the facts as above). After carefully considering the proof in this case, and reading and analyzing all the authorities cited on both sides, and such additional authorities as we were able to find after an exhaustive and painstaking search, we find at least four questions are presented herein: First. Is relator entitled to a writ of mandamus when he has a plain and adequate remedy in the ordinary course of law? Second. What law of procedure shall apply in the disposition of the cases against him? Shall the law of Arkansas, as adopted by Congress, and put in force in the Indian Territory at the time of the finding of the indictments against relator, or shall the laws of the Territory of Oklahoma, as extended over the Indian Territory by an act of Congress known as the "Enabling Act," apply? Third. What, under the law applicable in this case, is meant by a speedy public trial? Fourth. Has the relator been denied the benefit of a speedy public trial by an impartial jury, as guaranteed to him by the

provisions of the Constitution, and the statutes in force in the jurisdiction where his cases are pending?

Considering said propositions in the above order, we have first: "Is the relator entitled to a writ of mandamus when he has a plain and adequate remedy in the ordinary course of the law?" Section 4885, Wilson's Rev. & Ann. St. Okla. 1903, referring to the writ of mandamus, provides: "Sec. 4885. This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law." This court thinks that under the facts and circumstances of this case, the relator has a plain and adequate remedy in the ordinary course of the law: First. By a decision upon his motion pending in the Ninth judicial district of this state, for the county of Okmulgee, wherein he asks to be discharged by reason of not having received a speedy trial, as provided by law. It is true that the relator's petition alleges, and one of the learned counsel, in his affidavit in support of the petition, swears, that the respondent, as the judge of said district court for said county, failed and refused to decide said motion. This the respondent says, under his oath, is not true; on the contrary, that the motion of relator, filed May 5, 1908, demanding a trial was never argued in said court; that said court never refused to enter an order of record, either discharging the relator and dismissing the said cases against him, or overruling said motion and setting said cases for trial, and that said motion is wholly undetermined. The burden of proof being on the relator, weighing the evidence in the usual way, and giving the respondent the benefit of the legal presumption that every public officer and every court is presumed to do its duty under the law, we find that said motion is therefore still pending in said court. In *Patterson v. State,* 49 N. J. Law, 326, 8 Atl. 305, the court holds:

"A defendant should not be discharged on *habeas corpus* because he has not been tried the second term after issue joined, under the provisions of section 65 of the act concerning criminal proceedings, unless it appears, first, that he has applied to the trial court and has been refused his discharge;

and, secondly, that such refusal was so arbitary and groundless as to amount to a clear abuse ·of discretion."

Secondly. The relator has another plain and adequate remedy at law, in this: that in the event said motion demanding his discharge in said court is overruled, and he is convicted in said court, and he desires ʰto do so, he has a right to appeal from said court to this court. See *Territory of Oklahoma, on the relation of H. ·L. Miller v. Hewitt et al.,* 5 Okla. 167; and *Wood, Respondent, v. Strother, Auditor, et al.,* 76 Cal. 545, 18 Pac. 766, 9 Am. St. Rep. 249; *Ex parte Campbell et al.,* 130 Ala. 171, 30 South. 385; *Stewart v. Territory of Oklahoma ex rel.,* 4 Okla. 707, 46 Pac. 487; *Nettie Collet v. Wm. M. Allison,* 1 Okla. 42, 25 Pac. 516.

Finding, therefore, that said relator has a plain and adequate remedy at law, he is not entitled to a writ of mandamus at this time; but cases might arise where, through an abuse of the discretion of the trial judge, it would be otherwise. This court might well have rested from its labors in connection ʼwith this case by denying the writ, for the reasons already stated; but, inasmuch as this court has, as heretofore announced, determined to decide every material proposition fairly made in the record presented to it, and realizing the great importance of the questions involved, and feeling the interests of justice and the necessity of settling ʼall questions of procedure in the state as speedily as possible, we will, therefore, decide all the other essential propositions made by the record and· proof herein.

Coming now to the second proposition: "What law of procedure shall be applied in the determination of the rights of the relator?" We think the law in force in the Indian Territory from the time chapter 46 of Mansfield's Digest of the Laws of the State of Arkansas was adopted by Act Cong. May 2, 1890, c. 182, 26 Stat. 81, and put in force in the Indian Territory, and continuing until Oklahoma was admitted into the Union, shall control. Within the meaning of the Constitution of the United States, any law is *ex post facto* which is enacted after the commission of the offense, and which, in re-

lation to it or its consequences, in any way affects the material situation of the accused to his prejudice or disadvantage. This doctrine is most ably sustained in a very learned and exhaustive opinion written by one of the world's ablest jurists, Mr. Justice Miller, of the Supreme Court of the United States, and decided by that court in the case of *Kring v. Missouri,* 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506, a capital case, Kring, having been indicted and convicted of murder in the first degree. The judgment was affirmed by the Supreme Court of Missouri, a previous sentence, however, having been pronounced against him on his plea of guilty of murder in the second degree, and subjecting him to imprisonment for 25 years, which sentence on his plea had been appealed, reversed, and set aside by said court. By the law of Missouri, in force when the homicide was committed, this sentence was, in effect, an acquittal of the crime of murder in a higher degree. Before his plea of guilty was entered, the law was changed so that by force of its provisions, if a judgment on that plea be lawfully set aside, it shall not be held to be an acquittal of the higher crime. Held that, as to this case, the new law was *ex post facto,* within the meaning of section 10, art. 1, of the Constitution of the United States, and that he could not be again tried for murder in the first degree This decision is entirely in accordance with our conception of justice and fairness. The accused should be tried and dealt with under the law as it existed at the time of the commission of the crime of which he stands charged. Any other doctrine would be fraught with many hardships and uncertainties, and would be repugnant to the well-established policy of the law.

It was, by counsel in the Kring Case, urged that as to the rights of persons charged with crime under subsequent legislation affecting those rights, even though the changes in the law were radically to the disadvantage of the accused, it is not *ex post facto,* because it was a change, not in crimes, but in criminal procedure. This view the Supreme Court of the United States refused to accept, but proceeded to define the much vexed question as to what is meant by "procedure" as a law term; and

said court wisely adopted the definition laid down by the distinguished writer on criminal law, Joel Prentiss Bishop, in his valuable work on Criminal Procedure. Bishop, in the first chapter of his work, undertakes to define what is meant by "procedure." He says: `

"Sec. 2. The term 'procedure' is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice."

And in defining practice in this sense, he says:

"The word means those legal rules which direct the course of proceeding to bring parties into the court, and the course of court after they are brought in."

Evidence:

"Signifies those rules of law whereby we determine what testimony is to be admitted and what rejected in each case, and what is the weight to be given to the testimony admitted."

We think the court in the *Kring v. Missouri* Case lays down a correct and clear idea of what is intended by the word "procedure" as applied to a criminal case. It is, therefore, obvious that a law which is one of procedure may be decidedly obnoxious as an *ex post facto;* for any law which would alter the legal rules of evidence, or receive less, or different, testimony than the law rquires at the time of the commission of the offense, or would apply different rules for the conduct of the trial of the case, is an *ex post facto* law. Many instances might be cited where a change of the law would not, in fact, change the crime or its punishment, but would still, in the application of the changed condition of the procedure, materially and prejudicially affect the rights of the accused. No *ex post facto* law will be enforced against the accused which would in any way be prejudicial to his rights.

We think that Congress, in passing the enabling act, intended to settle the question as to the lay applicable in cases then pending in the Indian Territory. Section 20 of the enabling act provides: (Act March 4, 1907, c. 2911, 34 Stat. 1287)

"All criminal cases pending in the United States courts in the Indian Territory not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be prosecuted to final determination in the state courts of Oklahoma under the laws now in force in that territory."

This court, therefore, holds that the law in force in the Indian Territory at the time the indictments were returned in the cases against the relator shall govern the disposition of his cases.

This brings us to the third proposition: "What, under the law applicable in this case, is meant by 'speedy trial'?" The provisions of the sixth amendment to the Constitution of the United States, guaranteeing the accused a speedy trial, are applicable to the territories, including the Indian Territory. This is well settled in the cases of *In re Dykes et al.*, 13 Okla. 339, 74 Pac. 506; *Reynolds v. United States,* 98 U. S. 145, 25 L. Ed. 244; *Callan v. ilson,* 127 U. S. 550, 8 Sup. Ct. 1301, 32 L. Ed. 223; *Rasmussen v. United States,* v97 U. S. 522, 25 Sup. Ct. 514, 49 L. Ed. 862; and *Stewart v. State,* 13 Ark. 720. Neither the Constitution of the United States, nor any act of Congress, fixes the time within which a person accused of crime and imprisoned shall be tried; but the act of Congress of May 2, 1890, c. 182, 26 Stat. p. 87, § 11, adopting and putting in force in the Indian Territory, chapter 46 of the General Laws of the State of Arkansas, entitled "Criminal Procedure," offers a definition of "speedy trial," or rather fixes the limitations within which a trial might be had without violating the Constitutional provisions. The part of said chapter 46 applicable to the case at bar is the provisions of sections 2192 and 2193 of Mansfield's Digest of the General Laws of the State of Arkansas:

"Sec. 2192. If any person indicted for any offense and held to bail shall not be brought to trial before the end of the third term of the court in which such indictment is pending, it shall be held after a finding of such indictment and holding to bail thereon, he shall be discharged so far as relates to such offense, unless the delay happens on his application.

"Sec. 2193. Nothing in the two preceding sections shall be so construed as to discharge any person who shall have been in-

dicted for any criminal offense on account of the failure of the judge to hold any term of court, or for the want of time to try such person at any term of the court."

Whenever Congress in legislating for the territories (including Indian Territory) borrowed, from the statutes of a state, provisions which had received in such state a known, defined, and settled construction before they were enacted by Congress, that construction must be deemed to have been adopted by the courts over which such legislation extended; and the provisions of such laws should be construed as they were understood at the time in the state from which the same were borrowed. American & English Enc. of Law (2d Ed.) vol. 26, p. 702, and cases cited. We find that sections 2192 and 2193, of Mansfield's Digest, just quoted, had received in the state of Arkansas a definite and settled construction long before said statutes were adopted by the act of Congress putting them in force in the Indian Territory. In the case of *Stewart v. State,* 13 Ark. 720, the court, after very carefully considering the case, held that, notwithstanding there had been held three regular terms of court after the finding of the indictment against Stewart, at which there had been ample time in which to try the case, the accused, in order to avail himself of the rights conferred by that statute, was required to place himself upon record in the court in which the indictment was pending in the attitude of demanding a trial, or, at least, to have opposed postponement. *Thos. A. Watts, Plaintiff in Error v. State of Georgia,* 26 Ga. 231; *Dillard v. State,* 65 Ark. 404, 46 S. W. 533; *State of Iowa v. Louis Enke,* 85 Iowa, 35, 51 N. W. 1146; *Patterson v. State,* 49 N. J. Law, 327, 8 Atl. 305. The record in this case does not show that the relator opposed the continuance of his cases during the two terms of the federal court, of which he complains, and apparently made no effort whatever to have his cases brought to trial in said court, nor does the record disclose that he objected to a continuance of his cases at the first two terms of the state court in which the indictments against him were then pending. If, in fact, the first two terms of the state court were, in law, such terms as the re-

lator could have insisted upon being tried at on said indictments, it is well settled that the accused will not be heard to complain that he was not tried at a term of court when, for good reasons, no jury was summoned to try cases during said term; or where a jury had been summoned, and for good cause, such as a pestilence, or the existence of an epidemic of contagious disease, the jury summoned for that term was discharged. *People v. Benc,* 130 Cal. 159, 62 Pac. 404; *People v. John Vesalo,* 120 Cal. 168, 52 Pac. 305; *State v. Huting,* 21 Mo. 464. The proof in this case shows that the first, or December, 1907, term 'of the district court of the Ninth judicial district of Oklahoma, for Okmulgee, in which the indictments against relator are pending, was called for the purpose only of organizing said court and putting the "machinery in running order," and, therefore, no jury was summoned; that at the January, 1908, term, a jury was called for said court, and relator's cases set down for trial on the 10th day of February, 1908; that neither the relator nor his attorneys were present at said term, and had made no preparation whatever for the trial of his cases, or either of them, at said term; and that neither relator nor his attorneys made any objection to the court discharging the jury on account of the smallpox epidemic, or for any other reason. Relator, therefore, waived his right to be tried at said term. (See section 995 and succeeding sections, Bishop's New Criminal Law, and cases there cited.) The record shows that on the 5th day of May, 1908, during the April term of said court, relator, by his attorneys, filed in said court the following motion:

"Now comes defendant by his attorneys, Stanford & Cochran, and formally demands that he be put upon his trial in the above-entitled cause, or that he be discharged from the indictment herein, by reason of his being denied his right of a speedy trial."

The same motion was filed in each of the cases pending in said court against relator. As we said before, the proof herein adduced does not show, nor does the record of said court show, that said motions, or either of them, have ever been passed upon

by said court. But, for the purpose of settling these questions, so far as this court is concerned, we will treat the record as if said motions had, in fact, been overruled.

This brings us to the fourth and last proposition: "Has the relator had the benefit of a speedy public trial, as guaranteed to him by the provisions of the Constitution and statutes in force in the jurisdiction where his cases are pending?" The relator bases his claim for a peremptory writ of mandamus from this court compelling respondent, as district judge of the Ninth judicial district of this state, to make an order discharging him, upon the·ground that he has been deprived, through the fault of the state, of his constitutional· right to a speedy trial. We have carefully read all the cases cited by the relator in support of his contentions herein, and we find from such examination that the cases first hereinafter cited fully authorize, in a proper case, the writ of mandamus to enforce the dismissal of a criminal action where the right to a speedy trial has been denied,· *Ex parte Cole,* 28Ala. 50; *Palmer v. Jackson County,* 90 Mich. 1, 50 N. W. 1086; *State v. Johnson, Judge,* 105 Wis. 90, 80 N. W. 1104; *Schwartz v. Barry, Judge,* 90 Mich. 207, 51 N. W. 279; *Ex parte Scott,* 19 Ohio St. 581; *State v. Burgoyne,* 7 Ohio St. 153; *Gordon v. Longest,* 16 Pet. 97, 10 L. Ed. 900; *Watson v. Judge,* 40 Mich. 729.

The relator, in support of his contention that he should be discharged from said indictments, cites *State v. Sims,* 1 Overt. (Tenn.) 253. The defendant in this case was committed for steal- ing goods out of Potter's store. There was no Attorney Gen- eral, nor any person to prosecute for the state. Campbell, J., requested the prosecutor to be called. He was, and asked if he had anything. to say as to why the court should not discharge the defendant, as his counsel insisted that he had a· right to claim his discharge.

"Overton, J. The ninth section of the Bill of·Rights secures to the citizen the right to a speedy public trial, and to demand the cause of the accusation against him. The state has omitted to provide an Attorney General since the resignation of the former

one. Upon this man's demanding the cause of accusation against him, and that he shall have a trial, and there being no reason shown why he should not, he ought to be discharged. The omission of the state to provide a public prosecutor cannot render the provision of the Constitution inefficient. This circumstance of itself furnishes no ground to keep the pirsoner six months longer in confinement."

"Campbell, J. and Powel, J., gave no decisive opinion on this ground, but the prisoner was discharged."

This case was tried over a hundred years ago, and is the first case we have found where the right of a speedy trial in a criminal case found judicial determination in this country. The above case in no wise supports the contention of relator in this case. In the case at bar the state provided a prosecutor, who, according to his affidavit filed in this case, was always ready, and is now ready to try the cases of the relator, but was unable to do so for the want of time.

Relator cites the case of *Newlin v. People,* 221 Ill. 166, 77 N. E. 529, an Illinois case. The state of Illinois has a statute requiring that all criminal cases shall be tried within four months of the date of the commitment; failing to do so, confers an absolute right on the person charged with the crime and imprisoned to be set at liberty unless tried within the time limited. It will be observed that under the Illinois statute the person charged with the crime must be imprisoned before he has a right to a discharge after the four months' period has expired. The court in said case holds that where a person charged with crime and imprisoned applies for his discharge, it is not sufficient to say that it was inconvenient or impossible for the judges of the court to hold the term of court at the time fixed by statute, within the four months. It will be observed, also, that under chapter 37, § 57, of the Statutes of Illinois (Hurd's Rev. St. 1908), different judges may hold court for each other, and perform each other's duties where they find it necessary or convenient; and that the right secured to the accused by said statute cannot be defeated arbitrarily by an order made without his consent, dispensing with the services of a jury at a term commencing within

four months of the date of the commitment. Thus we find from an examination of the facts in this case that relator's contention is not sustained.

The relator cites the case of *People v. Morino,* 85 Cal. 515, 24 Pac. 892. This case construes section 13 of article 1 of the Constitution of California, which guarantees a speedy trial to every person charged with crime. The California Revised Code (section 1382) also provides that unless good cause is shown the court must order the prosecution to be dismissed. If the defendant, whose trial has not been postponed upon his own application, is not brought to trial within 60 days after the filing of the indictment or information, this case holds, "that a person against whom information was filed on August 7th, and who was arraigned and pleaded not guilty five days later, was entitled to a dismissal in the case for want of prosecution on motion made the following March, when it appeared he had made no application for a continuance, and no cause for the delay was shown by the prosecution." In this case there was no cause whatever for the delay shown.

*People v. Buckley,* 116 Cal. 146, 47 Pac. 1009, is also cited and relied upon. In this case information was filed December 27th; defendant arraigned January 4th; demurred on the 11th; demurrer argued 18th, and overruled the 25th. Defendant then pleaded not guilty. Case was called for trial February 12th; defendant obtained a continuance of one day, but the trial did not occur until March 18th. Held, that defendant was entitled to dismissal under section 1382, providing that the prosecution shall be dismissed unless good cause to the contrary be shown. This court also held that the mere statement of the judge, on denying the motion to dismiss, that during the time of delay the court had been wholly occupied with other cases, does not show good cause for the delay. Nor was it good cause that a material witness for the state was absent, unless diligence was shown to procure his attendance.

*State v. Kuhn,* 154 Ind. 450, 57 N. E. 106, is also relied on by relator. This was a construction of section 1852, Burns' Ann.

St. Ind. 1894, and section 1783, Horner's Ann. St. Ind. 1897. These statutes provide that, unless the accused be brought to trial within three terms after admission to bail, he shall be discharged, unless the delay be caused by his own act. Held, that the prisoner, not having been brought to trial within the time prescribed by said statute, was entitled to be discharged.

These cases, with the case of *Van Buren v. People,* 7 Colo. App. 136, 42 Pac. 599, are all the cases cited and relied on by the relator. This last-named case holds:

"The elapse of three full terms of court after the issuance of a capias and arrest of the defendant without application to postpone or delay the trial, entitled him to a discharge, notwithstanding he was out on bail."

All the cases (with few exceptions) cited by relator upon the subject of the right of his discharge for want of speedy trial are either error or appeal cases, and not mandamus.

Many courts of last resort have defined the legal meaning of a speedy public trial, but we submit that in none of the states in which this question has found judicial investigation and decision have the facts regarding the condition of the courts been such as existed in the Indian Territory prior to statehood. It is well known to the bar, and public generally, in this state, that a condition existed in the federal courts of the Indian Territory before statehood unprecedented in the history of jurisprudence of the nation. Until about two years prior to statehood only four judges were provided to hold court in the entire territory, comprising the Five Civilized Tribes, and a population of, approximately, 800,000. It will be remembered that said judges had jurisdiction of all classes of criminal cases, from the smallest misdemeanor to capital offenses; and, also had jurisdiction of all civil cases, including chancery and probate matters. It was, therefore, a common occurrence to find upon the dockets of said courts thousands of undecided cases, both criminal and civil. It was, under such conditions, a physical impossibility for said courts to give all the accused speedy trials. It will be conceded that said courts did all in their power to dispatch business; so much so,

that the haste in which cases were sometimes disposed of often brought a blush of shame upon the cheek of the members of the bar, the jurors, and spectators This condition of affairs, combined with the ambition of at least one of the judges of said federal court to dispose of more cases than any of the other judges, caused him to attempt the horrible feat of sentencing 100 prisoners in 100 minutes, and similar travesties upon justice and the forms of law. The government sought to aid the congested condition of the dockets in said courts by appointing, about two years before statehood, four additional judges; but the number of accumulated cases and new cases had so grown upon the dockets of said courts that it was impossible for the additional judges to much relieve the situation. Therefore, in deciding the question of a speedy trial in this case, due regard should be had to all the facts and circumstances. It must also be remembered that respondent in this case fell heir, so to speak, to the congested condition of the docket in his district, and in which the relator's cases are pending; also that, necessarily, delays were caused by the change of the form of government, and the inauguration of the state courts.

Many courts of last resort in states where conditions have been much more favorable to the enforcement of the right of a speedy trial than those existing in this state at this time have defined the legal meaning of a speedy public trial. One of the early cases on this subject is found in the case of *Nixon v. State*, 2 Smedes & M. (Miss.) 497, 41 Am. Dec. 601. The first syllabus of this case reads:

"By a speedy trial is intended a trial conducted according to the fixed rules, regulations, and proceedings of law, free from vexatious, capricious, and offensive delays manufactured by the ministers of justice."

In *State, Respondent, v. Huting*, 21 Mo. 464, referring to a statute in that state conferring the right of speedy trial, bottom of second syllabus says: "The statute was intended to operate only when there is some laches on the part of the state." In this case the court further holds:

"It is very clear that one arrested and accused of crime has not the right to demand a trial immediately upon the accusation or arrest being made. He must wait until a regular term of the court having jurisdiction of the offense with which he is charged, until an indictment is found and presented, and until the prosecution has had a reasonable time to prepare for trial. Nor does a speedy trial mean a trial immediately upon presentation of the indictment or the arrest upon it. It simply means that the trial shall take place as soon as possible after the indictment has been found, without depriving the prosecution of a reasonable time for preparation. The law is the embodiment of reason and good sense; hence, while it secures to every person accused of crime the right to have such charge speedily determined by a competent jury, it does not exact impossibilities, extraordinary efforts, diligence, or exertion from the courts or representatives of the state, nor does it contemplate that the right of a speedy trial which it guarantees to the prisoner shall operate to deprive the state of a reasonable opportunity of fairly prosecuting the prisoner."

The right of a speedy trial is necessarily relative; it is consistent with delays, and depends upon circumstances. It secures rights for the defendant, but it does not preclude the rights of public justice. *Beavers v. Haubert,* 198 U. S. 86, 25 Sup. Ct. 573, 49 L. Ed. 950.

"There is no doubt that necessity, either moral or physical, may raise an available exception to the letter of the *habeas corpus* act. A court is not bound to peril life in an attempt to perform what was intended to be required of it. The Legislature intended to prevent willful and oppressive delay; and it is sufficient that there is no color of imputation of it." (*Commonwealth v. Jailer,* 7 Watts [Pa.] 366).

From the proof it clearly appears that there was pending in the district court of Okmulgee county, at the beginning of the September, 1908, term, 419 criminal cases and 409 civil cases; and that since the admission of Oklahoma as a state more cases have been filed that it has been possible to try; and that it was a physical impossibility, and beyond the power of physical and mental achievement, to have disposed of all the criminal cases on the docket within the time of the terms of court as fixed by order of the Supreme Court. Ordinarily, a court should require a

showing to be made by affidavit, in order to continue cases for the term, when such continuances are objected to by either party; but when a condition of affairs exists that is notorious, and about which, from its very nature, there could be no conflict, the court is authorized, by its own motion, to continue the causes for the term. The regulation of the business of the term is a matter exclusively within the control of the judge, and cannot be interfered with. *Ex parte Larkin,* 11 Nev. 90; *Ex parte Stanley,* 4 Nev. 116.

In *State v. Enke,* 85 Iowa, 35, 51 N. W. 1146, held: Where the trial has not been postponed upon defendant's application, if he be not brought to trial at the next regular term of the court in which the indictment is triable, after the same is found, the court must order the defendant to be dismissed, unless for good cause to the contrary. In this case the record did not show that the accused made objection to the continuance of the case. The court held: "We do not think that it was necessary that the record should show the reason why the case was continued."

In New Jersey the statutes provide that every indictment shall be tried at the term or session in which issue is joined, or the term after, unless the court, for just cause, shall allow furthei time for the trial thereof, and, if such indictment be not so tried, the defendant shall be discharged. The Supreme Court, in the case of *Patterson v. State,* 49 N. J. Law, 326, 8 Atl. 305, where the accused relied upon this statutory provision in support of his motion to be discharged held that the statute was drafted to effectuate the purpose which the constitutional guaranty of a speedy trial was designed to secure, that the remedy of accused lies in the first instance in the trial court, for the reason that the existence of facts which will afford a just cause for allowance of further time is peculiarly within the knowledge of the trial court, and that nowhere else can the exercise of the discretion be so intelligently discharged.

Judge Cooley, in his excellent work on Constitutional Limitations, says: "It is required that the trial shall be speedy; and

here also the injunction is addressed to the sense of justice and sound judgment of the court." Cooley on Const. Lim. p. 311.

It must appear that the application was made to the trial court for discharge, and that there was an arbitrary and causeless refusal to do so, before a discharge would be ordered by appellate court. It would be presumed that the court exercised discretion in a proper, honest, and judicial spirit; and that sufficient reasons were before the court to justify the delay. An appellate court will not review the exercise of discretion by a lower court, unless it appears from the record or proof that the trial court had abused such discretion.

Section 2192, Mansfield's Digest of the Laws of the State of Arkansas, was passed to protect prisoners, and afford them a speedy trial. If, therefore, the state should indict a person and confine him in the prison of the county, or cause him to give bail, as the case may require, and afterwards took no steps to bring accused to trial, and thus lie by and do nothing until the third term after that at which the indictment was found, such delay and neglect on the part the state will authorize and justify the discharge of accused from such offense. On the other hand, if the state makes every proper and reasonable exertion to bring the accused to trial, yet fails, from causes beyond the control of the state, the trial may be properly delayed.

A fair and reasonable construction of sections 2192 and 2193 evidently contemplated that the accused is not to be discharged, as a matter of course, after the expiration of three terms, or at any other term, except on application to the court. Upon such application being made, it becomes a question whether the delay resulted from any of the causes which were contained in said section 2193. If the delay was not occasioned by any of the causes within the exception, the court, if so satisfied, should order the relator discharged. But, if, however, the court, upon such application being made, should be honestly satisfied that the delay was the result of one of the causes within the exception, it would be the duty of the court to continue the cause until the next term,

and hold the accused, unconditionally, to await his trial as long and as often as the state is able to make it truthfully appear that the occasion of the delay is one of the excepted causes enumerated in said section.

The court below is authorized to use its discretion in the disposition of such motion to discharge, unless the accused has made out a case in all respects free from any of the statutory exceptions. Then such court has no further discretionary power to continue— the application and motion to discharge should be allowed.

In support of the findings of the court in this case see copious notes to *Nixon v. State,* 2 Smedes & M. (Miss.) 497, 41 Am. Dec. 601, and *Dillard v. State,* 65 Ark. 404, 46 S. W. 533; *In re James Dykes et al.,* 13 Okla. 339, 74 Pac. 506; *Ex parte Mc-Gehan,* 22 Ohio St. 442; *United States v. Fox,* 3 Mont. 512; *State of Iowa v. Enke,* 85 Iowa, 35, 51 N. W. 1146; *Wood v. Strother, Auditor,* 76 Cal. 545, 18 Pac. 766, 9 Am. St. Rep. 249; *Ex parte Turman,* 26 Tex. 708, 84 Am. Dec. 598; *People v. Benc,* 130 Cal. 159, 62 Pac. 404; *Ex parte Larkin,* 11 Nev. 90; *People v. Henry* 77 Cal. 445, 19 Pac. 830; *Commonwealth v. Adcock,* 8 Grat. (Va.) 661; *Roebuck, Plaintiff in Error, v. State,* 57 Ga. 154; *State of Utah v. Endsley,* 19 Utah, 478, 57 Pac. 430; *In re Murphy,* (C. C.) 87 Fed. 549.

The proof fails to show laches on the part of the court below in bringing relator to trial—the contrary is shown to be true. At the first term no jury was summoned, and the term so-called (as we above stated) was for the purpose of organizing the state courts, it being the first term under statehood. The second term complained of, the jury was discharged on account of smallpox epidemic, but not until after the witnesses for the state had been subpoenaed in relator's cases for February 10th, of said term, which shows diligence on the part of the officers of the court and respondent to bring relator's cases to trial.

For the reasons herein stated, the peremptory writ of mandamus is denied.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.